**SOUTHWESTERN BELL TELE-
PHONE COMPANY, et al.,
Petitioners,**

v.

**FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents.**

**AT&T Corporation, et al., Intervenors.**

**No. 98–1197.**

United States Court of Appeals,
District of Columbia Circuit.

Argued March 8, 1999.

Decided June 25, 1999.

Geoffrey M. Klineberg argued the cause for petitioners. With him on the briefs were Michael K. Kellogg, Mark L. Evans, James D. Ellis, Robert M. Lynch, Durward D. Dupre, Michael J. Zpevak, Thomas A. Pajda, Michael E. Glover, and Edward Shakin.

Joel Marcus, Counsel, Federal Communications Commission, argued the cause for respondents. On the brief were Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, Robert B. Nicholson and Robert J. Wiggers, Attorneys, Christopher J. Wright, General Counsel, Federal Communications Commission, John E. Ingle, Deputy Associate General Counsel, and Carl D. Lawson, Counsel.

Maria L. Woodbridge, Donald B. Verrilli, Jr., Nory Miller, Mark C. Rosenblum, Peter H. Jacoby, Jules M. Perlberg and Stephen F. Smith were on the brief for intervenors MCI Telecommunications Corporation and AT&T Corporation. Matthew B. Pachman and Gene C. Schaerr entered appearances.

Before: WALD, SILBERMAN, and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The Federal Communications Commission determined that the method by which six local exchange carriers (LECs) calculated the "common line basket" in arriving at their 1997–98 tariffs resulted in unjust and unreasonable rates charged to interex-

change carriers (IXCs), and it ordered the LECs to refund the overcharges. Two of the LECs, Southwestern Bell Telephone Company and the Bell Atlantic telephone companies, sought reconsideration of that order, which the Commission denied. Southwestern Bell then petitioned for review of the order denying reconsideration. As explained below, an order denying reconsideration is not reviewable for material error but only for new evidence or changed circumstances. Applying that standard of review, we deny the petition.

## I. Background

In 1990 the Commission adopted a price cap system for larger LECs, including petitioner Southwestern Bell and intervenor Bell Atlantic. The general features of the price cap system are described in other opinions of this court. *See, e.g., Illinois Public Telecomms. Ass'n v. FCC*, 117 F.3d 555, 570 (1997); *Southwestern Bell Tel. Co. v. FCC*, 100 F.3d 1004, 1005 (1996). The component of the price cap pertinent to this case is the "common line basket," which contains all the interstate charges associated with the "local loop"—the facilities that carry traffic between the end user and a LEC's central switch.

The cost of the local loop is shared by end users and the IXCs. The precise formula for determining the amounts to be paid by the two groups is quite complex, *see generally* 47 C.F.R. § 69, but a simple description will suffice for this case. The portion of the "common line basket" not allocated automatically to the IXCs is known as the base factor portion (BFP). The BFP is divided by the projected end user common line (EUCL) demand to arrive at a monthly EUCL charge. End users are charged the lower of that amount or their EUCL cap. Prior to 1998 the caps were $3.50 for residential and single-line business subscribers, and $9.00 for multi-line business subscribers. That is, if the calculated EUCL charge was less than or equal to $3.50, then a LEC would recover the full BFP from end users. If

the calculated EUCL charge was more than $3.50, then residential and single-line business users would pay $3.50 and multi-line business users would pay the lower of the EUCL charge or $9.00; the LEC would recover the remainder of the BFP through a per-minute carrier common line (CCL) charge to the IXCs. Accordingly, between $3.50 and $9.00 a change in the level of the EUCL charge would inversely affect the level of the CCL charge to the IXCs.

At the urging of the IXCs, which claimed that the LECs had been overcharging them for per-minute access to the local loop since the inception of the price cap system, the Commission suspended for one day the 1997–98 tariffs filed by the price cap LECs. In the Commission's view the LECs had not adequately supported their BFP revenue requirements or their end user demand projections. In its order designating issues for investigation, the Commission required each LEC to submit its actual and projected BFP revenue requirements from 1991 to 1997, as well as a detailed explanation of the method by which it arrived at its BFP projection for the 1997–98 tariff. The Commission also noted that under-forecasting the BFP requirement would not necessarily reduce a LEC's total common line revenue; for reasons that need not detain us for the purposes of this case, "so long as this year's growth in minutes of use per common line is expected to exceed half the previous year's growth, the price cap LEC would expect to receive greater total common line revenues by charging relatively lower EUCLs and relatively higher CCL charges."

In its Investigation Order, which concluded its inquiry into the LECs' 1997–98 tariffs, the Commission found that six of the twelve LECs under investigation—petitioner Southwestern Bell, intervenor Bell Atlantic, U.S. West, NYNEX, GTE, and Sprint—"employed forecasts that reflect a consistent downward bias." The Commission concluded that the 1997–98 tariffs

filed by five of the six LECs contained the same bias, and that the tariff filed by the sixth, Bell Atlantic, had a specific flaw in its forecasting methodology. For the reasons set out in its Designation Order, the agency rejected the LECs' contention that they have little or no incentive to underestimate their BFP revenue requirements because, in their view, the allocation of charges between end users and the IXCs is a zero-sum game. The Commission next analyzed the pattern of underestimation in the LECs' forecasts of their per-line BFP revenue requirements, that is, the result of dividing the BFP by projected end user demand. The Commission concluded that "their forecasting techniques underestimate the per-line BFP revenue requirement in a statistically significant manner" and, therefore, that their 1997–98 "forecasts are likely to be the product of biased forecasting techniques." Finally, the Commission canvassed the reasons proffered by the LECs for their underestimates and rejected them, ultimately concluding that the 1997–98 per-minute charges to the IXCs were not just and reasonable.

The Commission then prescribed for each LEC a method for determining just and reasonable CCL charges for the purpose of ordering refunds to the IXCs, although it acknowledged that it had not previously prescribed a methodology for forecasting the BFP and stated that it continued "to believe that there are many different methods that could produce reasonable forecasts for individual LECs." It ordered the six LECs to use the revised BFP forecasts to calculate the refunds owed to the IXCs for the period July 1 to December 31, 1997 and to recalculate the EUCL and the CCL charges for use from January 1 through June 30, 1998.

Bell Atlantic petitioned for rehearing. In its petition, the LEC challenged the assumptions underlying the Commission's conclusion that underestimating the BFP revenue requirement is not necessarily a zero-sum game and the analysis upon which the Commission relied in concluding that the LECs' underestimates were the result of bias. Bell Atlantic also claimed that for tariffs filed in years prior to 1997 its method was more accurate than the Commission's. Finally, it argued that if the agency was going to order the LECs to make refunds to the IXCs, then it should have "provid[ed] a method to recover that same amount—which no one disputed they were entitled to recover—from end-users." Southwestern Bell submitted comments in support of Bell Atlantic's petition and also filed its own petition for rehearing, in which it challenged a different aspect of the Commission's decision. The agency denied both petitions for reconsideration.

Southwestern Bell then petitioned this court for review of the Reconsideration Order only. Bell Atlantic intervened and the two filed the joint briefs now before us.

## II. Analysis

The Commission, along with AT&T and MCI, which intervened in support of the agency, argue that the Reconsideration Order is not a reviewable order and, therefore, that this court must dismiss the petition to review that order for lack of jurisdiction. For the reasons given today in *Beehive Telephone Co. v. FCC*, 180 F.3d 314 (D.C.Cir.1999), we hold that we have jurisdiction over the petition for review pursuant to 47 U.S.C. §§ 402(a) and 405(b)(2). *See* 180 F.3d at 317–19. We agree that the petition is unreviewable, however, and we deny it on that ground.

### A. Standard of Review

■ Twenty-five years ago we regarded it as "settled [law] that an order which merely denies rehearing of another order is not itself reviewable" and that the filing of a petition for reconsideration simply "toll[s] the period for seeking judicial review" of the underlying order. *Microwave Communications, Inc. v. FCC*, 515 F.2d

385, 387 n. 7 (1974). The Supreme Court reached the same conclusion thirteen years later in *ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 279–80, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987), citing our earlier decision with approval.

In the Supreme Court case a union representing railroad employees sought review of two decisions of the Interstate Commerce Commission, one denying the Union's petition for clarification, which was "in effect a petition to reopen," *id.* at 285, 107 S.Ct. 2360, and the other denying its petition for reconsideration of the first petition. The Court held that when an agency *"refuses* to reopen a proceeding, what is reviewable is merely the lawfulness of the refusal ... [and] overturning the refusal to reopen requires 'a showing of the clearest abuse of discretion.' " *Id.* at 278, 107 S.Ct. 2360 (emphasis in original). Reviewing its past decisions, the Court noted that it had entertained a petition to review an agency's refusal to reopen a proceeding only in cases involving new evidence or changed circumstances and never in a case alleging solely material error. The Court explicated the distinction as follows:

> If review of denial to reopen for new evidence or changed circumstances is unavailable, the petitioner will have been deprived of all opportunity for judicial consideration—even on a "clearest abuse of discretion" basis—of facts which, through no fault of his own, the original proceeding did not contain. By contrast, where no new data but only "material error" has been put forward as the basis for reopening, an appeal places before the courts precisely the same substance that could have been brought there by appeal from the original order—but asks them to review it on the strange, one-step-removed basis of whether the agency decision is not only unlawful, but *so* unlawful that the refusal to reconsider it is an abuse of discretion. *Id.* at 279, 107 S.Ct. 2360 (emphasis in original).

The Court went on to explain that the latter sort of appeal

> serves no purpose whatever where a petition for reconsideration has been filed within a discretionary review period specifically provided by the agency (and within the period allotted for judicial review of the original order), since in that situation the petition tolls the period for judicial review of the original order, which can therefore be appealed to the courts *directly* after the petition for reconsideration is denied. *Id.* (emphasis in original).

When, as in *BLE,* a petition for reconsideration is filed outside the period allotted in the Hobbs Act for judicial review of an agency order, allowing review of the denial of reconsideration "would serve only the peculiar purpose of extending indefinitely the time within which *seriously* mistaken agency orders can be judicially overturned." *Id.* (emphasis in original).

The Court also noted that the Hobbs Act specifies only the "form of proceeding for judicial review," 5 U.S.C. § 703, whereas the Administrative Procedure Act "codifies the nature and attributes of judicial review, including the traditional principle of its unavailability 'to the extent that ... agency action is committed to agency discretion by law.' " *BLE,* 482 U.S. at 282, 107 S.Ct. 2360 (quoting 5 U.S.C. § 701(a)(2)). The Court held that this limitation upon judicial review in the APA "applies to the general grant of jurisdiction [in] the Hobbs Act." *Id.* Noting the "tradition of nonreviewability ... with regard to refusals to reconsider for material error," the Court concluded that "the agency's refusal to go back over ploughed ground is nonreviewable." *Id.* at 282–84, 107 S.Ct. 2360.

As we read *BLE,* therefore, a petition seeking review of an agency's decision not to reopen a proceeding is not reviewable unless the petition is based upon new evidence or changed circumstances.

## B. New Evidence

■ Southwestern Bell argues that its petition for reconsideration did raise new evidence, and therefore the Commission's denial of that petition is reviewable. Yet the evidence to which the petitioner points does not satisfy the test for new evidence set forth in *BLE*: "facts which, through no fault of [the petitioner's], the original proceeding did not contain." *Id.* at 279, 107 S.Ct. 2360; *see also* 47 U.S.C. § 405(a) (limiting evidence admissible upon reconsideration to "newly discovered evidence, evidence which has become available only since the original taking of evidence, [and] evidence which the Commission ... believes should have been taken in the original proceeding").

■ First, the Bells point to data showing the growth in minutes of use per common line from 1991 to 1997. Bell Atlantic relied upon these data to argue before the Commission that "there is no basis [for a LEC] to assume that future growth will always exceed [last year's growth divided by two]." But this evidence is not new in the sense of being discovered after the Commission issued its Investigation Order. Nor is it true, as the petitioner contends, that "[n]o party to the tariff proceeding had any reason to submit [this] evidence until after the FCC" issued that order. The Designation Order clearly set forth the Commission's view that underforecasting the BFP revenue requirement would be to a LEC's benefit if it could expect in the upcoming year that its increased growth in minutes per line would exceed half its increased growth during the previous year. The second alleged piece of new evidence—a demonstration that the method the Commission chose for prescribing the LECs' rates is less accurate than Bell Atlantic's method when applied to the tariffs filed prior to 1997—is not evidence at all, but simply an argument that the Commission made a material error.

Because Southwestern Bell has not shown that its petition for reconsideration was based upon new evidence or changed circumstances, we must deny its petition for review unless, as Southwestern argues next, its petition seeks review of something other than the agency's refusal to reopen the proceeding. The petitioner has two arguments to that effect, which we discuss in the next section.

## C. Other Grounds for Reviewing the Reconsideration Order

■ First, Southwestern Bell argues that by responding to its claim based upon the growth in minutes of use per common line from 1991 to 1997 and by including those data in the Reconsideration Order, the Commission reopened the proceeding and, therefore, the denial of reconsideration is reviewable on its merits. To this end, the petitioner correctly points out that in *BLE* the Court, in a dictum, stated that when an agency "reopens a proceeding for any reason and, after reconsideration, issues a new and final order setting forth the rights and obligations of the parties, that order—even if it merely reaffirms ... the original order—is reviewable on its merits." 482 U.S. at 278, 107 S.Ct. 2360. In that case the Court also made clear, however, that whether an agency has reopened a proceeding depends upon the formalities of its action: "Where the Commission's formal disposition is to deny reconsideration, and where it makes no alteration in the underlying order, we will not undertake an inquiry into whether reconsideration 'in fact' occurred." *Id.* at 280, 107 S.Ct. 2360. Here, the petitioner can point to no formal action of the Commission reopening the proceeding or otherwise modifying the underlying order. As we have noted before, even "discuss[ion of] the merits at length ... does not necessarily mean the agency has reopened the proceedings. ... Only when the agency has clearly stated or otherwise demonstrated that it has reopened the proceeding will the [denial of reconsideration] be ... subject to judicial review." *Sendra Corp. v. Magaw*, 111 F.3d 162, 167 (D.C.Cir.1997).

Second, Southwestern Bell suggests that we should read its petition for review of the Reconsideration Order as a petition for review of the Investigation Order. Review of the Investigation Order in this case, unlike review of the first order in *BLE*, would not circumvent the time limit in the Hobbs Act because Southwestern Bell's petition for reconsideration was filed within the 30–day period for such a filing, *see* 47 U.S.C. § 405(a), and therefore also within the 60–day period for seeking judicial review under the Hobbs Act. That is, having tolled the time limitation in the Hobbs Act, Southwestern Bell could have sought review of the Investigation Order after the Commission issued the Reconsideration Order. The petitioner also correctly points out that, in the cases upon which the agency and the intervenors rely, review of the denial of reconsideration would have effected an end run around the time limits for judicial review, *see, e.g., Sendra,* 111 F.3d at 166 (petition for reconsideration filed after statute of limitations had run), or the finality doctrine, *see, e.g., City of Benton v. NRC,* 136 F.3d 824, 826 (D.C.Cir.1998) (per curiam) (permitting petition naming non-final order to bring final order before court "would make unclear the point at which agency orders become final").

We have previously set out a test for determining whether a filing that names one order suffices to bring a different order before the court. *See Brookens v. White,* 795 F.2d 178, 180 (1986) (per curiam) ("[A] mistake in designating the judgment ... should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake"); *accord Nichols v. Board of Trustees of Asbestos Workers Local 24 Pension Plan,* 835 F.2d 881, 889 & n. 73 (D.C.Cir.1987); *see also*

*Foman v. Davis,* 371 U.S. 178, 181, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In *Brookens,* we held that "the specification of [other] orders and hearing dates and the failure to mention the [disputed] order in either the notice of appeal or the docketing statement indicate[d] an intent *not* to appeal the earlier grant of summary judgment." 795 F.2d at 181 (emphasis in original). In *Nichols,* however, we excused the appellants' failure to designate the judgment appealed from because their "Rule 10(b)(1) certificate plainly reveal[ed] their intention." 835 F.2d at 889.*

Applying the test of *Brookens* and *Nichols,* it is clear that the intent to seek review of the Investigation Order cannot fairly be inferred from either Southwestern Bell's petition for review or its subsequent filings (all of which were filed by inside counsel). The petition for review names only the Reconsideration Order and only that order is appended to the petition. The docketing statement that Southwestern Bell filed again mentions and attaches only the Reconsideration Order. Finally, Southwestern Bell's preliminary statement of issues both begins and ends by referring to the Reconsideration Order and mentions only issues raised in its and Bell Atlantic's petitions for reconsideration. In short, nothing prior to the brief filed in this court (by appellate counsel) gave the Commission any notice of Southwestern Bell's intent to seek review of the Investigation Order. Nor should that intent have been obvious.

Southwestern Bell's intent to seek review of the Investigation Order might seem obvious if its petition would otherwise appear to seek review of an obviously unreviewable order. As we have seen, however, under *BLE* a petitioner can obtain review of a denial of its petition for reconsideration if the petition was based

---

* Although *Brookens* and *Nichols* each involve a notice of appeal filed pursuant to Federal Rule of Appellate Procedure 3 that specified the wrong judgment of the district court, no party to the present case suggests that such a notice is not analogous to a petition for review filed pursuant to Federal Rule of Appellate Procedure 15. *See also Gottesman v. INS,* 33 F.3d 383, 388 (4th Cir.1994).

upon new evidence or changed circumstances; so there no doubt are cases in which a petitioner rationally seeks review only of the order denying reconsideration. Accordingly, we will not impose upon the respondent agency the obligation to determine when a party seeking review must have meant to name a different order in its petition for review because the order actually named in that petition is unreviewable.

Finally, because Southwestern Bell can point to nothing from which its "intent to appeal from [the Investigation Order] can be fairly inferred," *Brookens*, 795 F.2d at 180, we place no weight upon its claim that neither the Commission nor the intervenors were prejudiced by its failure to name the correct order. The lack of prejudice is a necessary, not a sufficient, condition for excusing a petitioner's mistake in naming the order of which review is sought. *See id.*

In sum, we reject Southwestern Bell's arguments that it sought review of something other than an order denying rehearing.

### III.   Conclusion

Southwestern Bell sought review of an order of the Commission over which we have jurisdiction but which, for the reasons set forth in Parts II.B and C above, is not reviewable. The petition for review is therefore

*Denied.*