**BEEHIVE TELEPHONE COMPANY, INC., and Beehive Telephone Inc., Nevada, Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**AT&T Corporation, Intervenor.**

No. 98–1293.

United States Court of Appeals, District of Columbia Circuit.

Argued March 26, 1999.

Decided June 25, 1999.

315

Russell D. Lukas argued the cause and filed the briefs for petitioners.

K. Michele Walters, Counsel, Federal Communications Commission, argued the cause for respondents. On the brief were Joel I. Klein, Assistant Attorney General, U.S. Department of Justice, Robert B. Nicholson and Robert J. Wiggers, Attorneys, Christopher J. Wright, General Counsel, Federal Communications Commission, John E. Ingle, Deputy Associate General Counsel, and Laurel R. Bergold, Counsel.

James P. Young argued the cause for intervenor. With him on the brief were Mark C. Rosenblum, Peter H. Jacoby, and Peter D. Keisler. David W. Carpenter entered an appearance.

Before: GINSBURG and ROGERS, Circuit Judges, and BUCKLEY, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The Federal Communications Commission determined that the rate Beehive Telephone Company charged interexchange carriers (IXCs) for local switching service was unjust and unreasonable, and it ordered the Company to refund the overcharges. Beehive sought reconsideration of that decision, which the Commis-

sion granted in part and denied in part. Beehive then petitioned this court for review which, for the reasons that follow, we deny.

## I. Background

Beehive is a local exchange carrier (LEC) operating in parts of nine counties in Utah and in two counties in Nevada. Beehive first filed its own tariff in 1994, having previously charged the interstate local switching rates filed by the National Exchange Carrier Association (NECA) on behalf of participating LECs. As a small LEC Beehive has the option of filing tariffs for traffic-sensitive interstate access charges under rules different from those that apply to larger LECs. *See* 47 C.F.R. § 61.39(a). In addition, while the largest LECs—the regional Bell Operating Companies and GTE—must calculate their tariffs under the Commission's price cap regulations, Beehive can and did opt for rate of return regulation. *See id.* § 61.41(a)(3); *see also United States Tel. Ass'n v. FCC,* — F.3d —, 1999 WL 317035, at *1 (D.C.Cir. May 21, 1999).

On July 22, 1997 Beehive filed a new tariff changing its interstate access charge. That charge has three components—a per-minute local transport termination charge, a per-minute local switching charge, and a per-minute per-mile charge for local transport facilities—each of which differs for premium and non-premium service (for the former of which AT&T may be the only customer). In the new tariff Beehive proposed to reduce its premium and non-premium charges for local transport termination and for the use of its local transport facilities, but to increase its per minute charge for local switching to $0.04012 from $0.0348 for premium service and to $0.01805 from $0.01566 for non-premium service.

AT&T filed a petition opposing Beehive's tariff. After reviewing AT&T's submission and Beehive's response thereto, the Commission was "not persuaded based on the present record that Beehive has shown that its proposed rate levels are justified under existing rules governing its interstate access charges." The Commission therefore suspended Beehive's tariff for one day and instituted an investigation. Nearly four months later the agency issued a "Designation Order" setting down the following issue for investigation: "Whether Beehive's traffic sensitive local switching rate is based on its interstate cost of service for the period since its last annual filing and related demand for the same period." In order to resolve that issue and to determine "whether its proposed switching rate for 1997/98 is reasonable ... in light of historical cost and demand trends," the Commission directed Beehive "to provide detailed cost data for calendar years 1994, 1995, and 1996" and to explain "any changes in costs and demand from year to year."

At that point, the Commission had just over one month in which to complete its investigation into the lawfulness of Beehive's tariff. *See* 47 U.S.C. § 204(a)(2)(A) ("the Commission shall ... issue an order concluding [a] hearing [under § 204] within 5 months after the date that the charge ... becomes effective"). In the Designation Order the Commission first set out a briefing schedule giving Beehive ten days in which to prepare its direct case, with briefing to conclude on December 29, 1997, eight days before the Commission's decision was due. Later in the order, however, the agency set forth another schedule, which gave Beehive 15 days in which to present its direct case, with briefing to conclude on December 31, 1997. Six days later the Commission amended the Designation Order to confirm the former schedule, whereupon Beehive sought an extension of the deadline for submission of its direct case, which the Commission granted to the extent of three days. Beehive submitted the bulk of its direct case on the new filing date, but the agency accepted supplemental materials that Beehive filed on the following two days and again later

in connection with its rebuttal of AT&T's opposition.

On January 6, 1998 the Commission issued an "Investigation Order" concluding its inquiry and holding that Beehive's proposed rate for local switching was unreasonable. First, the Commission found that Beehive "did not explain or provide data supporting the changes in its costs and demand from year to year." Indeed, Beehive admitted that it had erroneously based its proposed tariff only upon its 1996 cost and demand figures, and not upon the figures for both 1995 and 1996 as required by 47 C.F.R. § 61.39(b)(1)(ii). The Commission further noted that Beehive's rate of return for local switching had been 111% in 1995 and 65% in 1996, well over the 11.25% rate of return the agency had prescribed for LECs. In sum, "Beehive's failure to justify or support its proposed increase in operating expenses and its use of an unauthorized rate of return in calculating the interstate local switching rates" led the Commission to conclude that "Beehive's rates ... are unjust and unreasonable."

The Commission then prescribed a rate for the purpose of calculating refunds. The agency based that rate upon the ratio of total operating expenses (TOE) to total plant in service (TPIS) for similarly sized LECs that reported data to the NECA in 1995 and 1996. (The Commission assumed that Beehive would have a similar TOE to TPIS ratio, "[a]bsent unusual circumstances, which Beehive has not shown in this record.") The mean TOE to TPIS ratio for those LECs was 21.55%. "By contrast, the data upon which Beehive computed the local switching rates contained in [its 1997 tariff] show a ratio ... of 59.96%." Yet Beehive had reported ratios of 23.55% and 24.03% to the NECA in 1994 and 1995. Allowing that Beehive might be a higher-than-average cost LEC, the Commission adopted a TOE to TPIS ratio of 25% which, combined with the 11.25% permissible rate of return and Beehive's demand figures, led it to prescribe rates of $0.009443 for premium switching service and $0.004249 for non-premium switching service. Based upon these rates, Beehive submitted a plan to refund about $141,000 to its customers, which the agency approved.

Beehive sought reconsideration of the Investigation Order, claiming that the short briefing and decision-making period deprived it of its right to a full hearing; it did not use an unauthorized rate of return in calculating its local switching rates; it was not permitted to comment upon the NECA data the Commission used to prescribe a rate; it is an unusually high cost LEC for its size; the Commission adopted an erroneous demand figure; and the prescribed rate constituted a taking prohibited by the Fifth Amendment to the Constitution of the United States. The Commission granted the petition for reconsideration to the extent of admitting that it had erred in calculating Beehive's demand, and revised the prescribed local switching rates to $0.010106 and $0.004548 for premium and non-premium service, respectively; it denied Beehive's petition in all other respects.

Beehive then petitioned this court for review, invoking our jurisdiction under the Hobbs Act, 28 U.S.C. § 2342. Its petition, however, seeks review only of the Reconsideration Order and not of the underlying Investigation Order.

## II. Analysis

AT&T, intervening on behalf of the Commission, argues that the Reconsideration Order is not reviewable and that this court must therefore dismiss the petition for review for lack of jurisdiction. The Commission adopted AT&T's position at oral argument. We agree that the Order is unreviewable but, as explained below, not for want of jurisdiction.

### A. Jurisdiction and the Standard of Review

█] In *Southwestern Bell Telephone Co. v. FCC*, 180 F.3d 307 (D.C.Cir.1999)

released today, we hold that "a petition seeking review of an agency's decision not to reopen a proceeding is not reviewable unless the petition is based upon new evidence or changed circumstances." 180 F.3d at 311. That decision follows the teaching of the Supreme Court in *ICC v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987): When an agency *"refuses* to reopen a proceeding, what is reviewable is merely the lawfulness of the refusal ... [and] overturning the refusal to reopen requires 'a showing of the clearest abuse of discretion.'" *Id.* at 278, 107 S.Ct. 2360 (emphasis in original). Reviewing its past decisions, the Court noted that it had entertained a petition to review an agency's refusal to reopen a proceeding only in cases alleging new evidence or changed circumstances and never in a case alleging only material error. *See id.* at 278–79, 107 S.Ct. 2360. Further, the Court held that the Administrative Procedure Act "codifies the nature and attributes of judicial review [under the Hobbs Act], including the traditional principle of its unavailability 'to the extent that ... agency action is committed to agency discretion by law.'" *Id.* at 282, 107 S.Ct. 2360 (quoting 5 U.S.C. § 701(a)(2)). Because the Court "perceive[d] that a ... tradition of nonreviewability exist[ed] with regard to refusals to reconsider for material error," it concluded that "the agency's refusal to go back over ploughed ground is nonreviewable." *Id.* at 282–84, 107 S.Ct. 2360.

Beehive argues that *BLE* is inapplicable to this case in view of § 405(b) of the Communications Act, which the Congress added in 1988. It provides:

> (b)(1) Within 90 days after receiving a petition for reconsideration of an order concluding a hearing under section 204(a) of this title or concluding an investigation under section 208(b) of this title, the Commission shall issue an order granting or denying such petition.

> (2) Any order issued under paragraph (1) shall be a final order and may be appealed under section 402(a) of this title.

Because the Investigation Order concluded "a hearing under section 204(a)," Beehive maintains that the Reconsideration Order is "a final order [that] may be appealed under section 402(a)," which states that "[a]ny proceeding to ... set aside ... any order of the Commission ... shall be brought as provided by and in the manner prescribed in" the Hobbs Act. Further, Beehive contends that § 405(b) both overrides the "tradition of nonreviewability ... with regard to refusals [of the Commission] to reconsider for material error" and renders the Commission's decision upon reconsideration one not committed to agency discretion. *BLE*, 482 U.S. at 282, 107 S.Ct. 2360.

Beehive misapprehends the import of § 405(b), however. First, that provision states merely that certain types of orders granting or denying petitions for reconsideration are appealable under the Hobbs Act. As the Supreme Court pointed out in *BLE*, "[w]hile the Hobbs Act specifies the form of proceeding for judicial review of ICC orders, it is the [APA] that codifies the nature and attributes of judicial review." *Id.* Nothing in § 405(b) alters the standard of review that a court would apply in reviewing a decision of the Commission granting or denying a petition for reconsideration. Accordingly, "the impossibility of devising an adequate standard of review" for an order denying a petition for reconsideration based upon a claim of material error continues to counsel against review of such a petition. *Id.*

Nor does § 405(b) alter the "tradition of nonreviewability ... with regard to refusals to reconsider for material error." *Id.* When the Congress added subsection (b) to § 405 it also added §§ 204(a)(2)(C) and 208(b)(3) to the statute. Both provisions make "[a]ny order concluding a hearing [or investigation] under [§ 204(a) or § 208(b)] ... a final order [that] may be appealed

under section 402(a)." Even without those sections, however, no one could seriously argue that an order of the Commission concluding a hearing or investigation under § 204(a) or § 208(b) was not among the final orders made appealable in § 402(a). That is, if §§ 204(a)(2)(C) and 208(b)(3) are not superfluous, it is only because they serve, "in Macbeth's words, 'to make assurance double sure.'" *Shook v. District of Columbia Fin. Responsibility & Management Assistance Auth.*, 132 F.3d 775, 782 (D.C.Cir.1998). We read § 405(b)(2) in the same light: it merely makes explicit what was already implicit, namely, that an order denying a petition for reconsideration of an order concluding a hearing under § 204(a) or an investigation under § 208(b) is a final order that, pursuant to § 402(a), is appealable under the Hobbs Act.

Finally, the Commission's decision to deny a petition for reconsideration remains committed to agency discretion, and therefore unreviewable as provided in the APA. More specifically, while § 405(b)(1) limits the Commission's discretion with regard to the timing of its disposition of a petition for reconsideration under § 204(a), it does not constrain the Commission's discretion with regard to the merits of such a petition, and the APA precludes review of agency action "to the extent . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2).

In sum, pursuant to §§ 402(a) and 405(b)(2), this court has jurisdiction over Beehive's petition, which seeks review of a final order of the Commission and was filed in conformity with the requirements of the Hobbs Act. The *BLE* decision, in turn, governs the reviewability of the Commission's order denying rehearing. *Cf. Heckler v. Chaney*, 470 U.S. 821, 825, 837–38, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (jurisdiction over petition for review grounded in 28 U.S.C. § 1331, but agency action complained of in petition unreviewable under APA). Accordingly, we now turn to Beehive's two arguments that the Reconsideration Order is reviewable under the standard set out in *BLE* because Beehive's petition alleged new evidence or changed circumstances.

## B.  New Evidence

█ In *BLE*, the Court explained that the denial of a petition for reconsideration that raises new evidence is reviewable because otherwise "the petitioner will have been deprived of all opportunity for judicial consideration—even on a 'clearest abuse of discretion' basis—of facts which, through no fault of his own, the original proceeding did not contain." 482 U.S. at 279, 107 S.Ct. 2360. The evidence to which Beehive now refers us does not come within this rationale for review.

In its petition for reconsideration, Beehive sought to introduce evidence that its costs are unusually high compared to those of other LECs of a similar size. Beehive noted that it "is among the lowest density LECs in terms of access lines per exchange and per mile" and that it "has more exchanges (14) than the nearest similarly sized LEC (9)." Further, it argued that its "TOE to TPIS anomaly is explained by the fact that it uses leased switching equipment at four of its exchanges." Section 405(a), however, limits the evidence admissible upon reconsideration to "newly discovered evidence, evidence which has become available only since the original taking of evidence, [and] evidence which the Commission . . . believes should have been taken in the original proceeding." Beehive's evidence was clearly not new "in the sense of being discovered after the Commission issued its Investigation Order." *Southwestern Bell*, 180 F.3d at 312. Moreover, it was evidence that Beehive had reason to submit to the Commission as part of its direct case; the Designation Order required Beehive to provide "an explanation and data supporting any changes in costs and demand from year to year," of which the evidence detailed above would have been a part. Therefore, Beehive could have and should have put its pur-

portedly new evidence before the Commission in the original proceeding, not at the reconsideration stage.

■ In any event, even if we were to review Beehive's claim to have submitted new evidence, under the abuse of discretion standard implicit in *BLE* we would have to reject it. The Commission declined to allow the Company to introduce its purportedly new evidence because it found "that Beehive ha[d] failed to satisfy the requirements of Section 405[(a)] of the Communications Act and Section 1.106(c) of the Commission's rules." Pursuant to that rule, the Commission may grant a "petition for reconsideration which relies on facts not previously presented" only if such facts have changed since, or could not through ordinary diligence have been learned prior to, the petitioner's last opportunity to present such matters, or if the Commission determines that consideration of such facts "is required in the public interest." 47 C.F.R. § 1.106(c). Because Beehive knew, when it submitted its direct case, of the evidence it sought to present upon reconsideration, that evidence could be admitted only under the public interest standard. Inasmuch as Beehive does not even argue that standard is satisfied, we could hardly say that the Commission abused its discretion in refusing to admit that evidence.

Beehive does contend that, because it "sought reconsideration largely on due process grounds and the remedy it sought was for the FCC to reopen the record to consider new facts," the Reconsideration Order is reviewable under our reasoning in *Fritsch v. ICC,* 59 F.3d 248 (1995). In that case a railroad (CSX) had sought and received the approval of the Interstate Commerce Commission to abandon a line. Almost six months after CSX abandoned the line it reached an agreement with a county parks department to convert part of the line into a nature trail. Upon the petition of CSX the ICC reopened the abandonment proceeding and approved the rail-to-trail conversion. Six days after the time

for seeking reconsideration of that order had expired, a group of landowners over whose property the trail would run filed a petition to reopen the ICC proceeding, which the ICC denied. We held that the landowner's petition presented the ICC with "new material," namely, their claim that they were denied the opportunity to submit protests against CSX's petition to reopen. *Id.* at 251. Therefore, the denial of their petition was reviewable under the exception in *BLE* for petitions raising new matter. *See id.* at 252.

The rationale for our decision in *Fritsch* is clearly inapplicable here: if review of the ICC's denial of the landowners' petition were not available as new material under *BLE,* then a party "deprived of due process in an original agency petition could never obtain review of the merits although he never learned, actively or constructively, of the proceedings to deprive him of his rights until after the expiration of the [Hobbs Act] review period." *Id.* Unlike the landowners in *Fritsch,* Beehive filed its petition for rehearing within the 30–day statutory period for seeking reconsideration of a Commission order, *see* 47 U.S.C. § 405(a), thereby tolling the period for seeking judicial review of the Investigation Order. *See Southwestern Bell Tel. Co. v. FCC,* 116 F.3d 593, 596–97 (D.C.Cir.1997); *see also* 28 U.S.C. § 2344. Accordingly, Beehive could have sought judicial review of the alleged denial of due process by filing a timely petition for review of the Investigation Order following issuance of the Reconsideration Order.

Because Beehive has not made a showing of either new evidence or changed circumstances, "we must deny its petition for review unless ... its petition seeks review of something other than the agency's refusal to reopen the proceeding." *Southwestern Bell,* 180 F.3d 312–13. Beehive has two arguments to that effect, which we consider in the next section.

### C. Other Grounds for Reviewing the Reconsideration Order

First, Beehive notes that its filing a petition for reconsideration of the Investigation Order "rendered [that] order nonfinal and unreviewable as to [it]," which clearly is correct. *See Bellsouth Corp. v. FCC,* 17 F.3d 1487, 1489 (D.C.Cir.1994) ("[A] party that stays before an agency to seek reconsideration of an order cannot at the same time appear before a court to seek review of that same order, any more than the party could literally be in two places at the same time"). Then, Beehive urges that its petition for reconsideration transformed the Investigation Order into an interlocutory order and that "its petition for review of the Reconsideration Order [brought up] for review 'all interlocutory orders which preceded it.'" By denying reconsideration, however, the Commission confirmed the Investigation Order as a final order subject to judicial review; the Investigation Order never was an interlocutory order. *See id.* at 1490.

Second, Beehive argues that because the Commission granted reconsideration in part, the Reconsideration Order is a "new order immediately appealable" under *BLE.* 482 U.S. at 286, 107 S.Ct. 2360. In *BLE* the Court, in a dictum, did state that when an agency "reopens a proceeding for any reason and, after reconsideration, issues a new and final order setting forth the rights and obligations of the parties, that order—even if it merely reaffirms ... the original order—is reviewable on its merits." *Id.* at 278, 107 S.Ct. 2360; *see also id.* at 286, 107 S.Ct. 2360 ("If, of course, the ICC's action here had gone beyond what was (at most) clarification of an ambiguity, and in the guise of interpreting the original order in fact *revised* it, that would have been a new order immediately appealable" (emphasis in original)). In the same decision, however, the Court made clear that whether an agency has reopened a proceeding is dependent upon the formalities of its action: "Where the Commission's formal disposition is to deny reconsideration, and where it makes no alteration in the underlying order, we will not undertake an inquiry into whether reconsideration 'in fact' occurred." *Id.* at 280, 107 S.Ct. 2360. In this case, the Commission simply amended its prior order by adjusting the amount of Beehive's refund obligation. Accordingly, only the portion of the order actually reopened, which Beehive does not challenge, is reviewable on its merits. *Cf. Poulin v. Bowen,* 817 F.2d 865, 869 (D.C.Cir.1987) (when agency exercises discretion to reopen proceeding, new order is reviewable "to the extent of the reopening"). Therefore, we reject Beehive's arguments that it sought review of something other than the order denying rehearing.

### III. Conclusion

Beehive sought review solely of an order denying reconsideration. For the reasons set forth above, that order is unreviewable, and the petition for review is therefore

*Denied.*