United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 18, 1999 Decided February 29, 2000 

 No. 98-1516

 Herbert L. Schoenbohm, 
 Appellant

 v.

 Federal Communications Commission, 
 Appellee

 Appeal of Orders of the 
 Federal Communications Commission

 Lauren A. Colby argued the cause and filed the briefs for 
appellant.

 James M. Carr, Counsel, Federal Communications Com-
mission, argued the cause for appellee. With him on the brief 
were Christopher J. Wright, General Counsel, and Daniel M. 
Armstrong, Associate General Counsel. Pamela L. Smith, 
Counsel, entered an appearance.

 Before: Sentelle, Henderson, and Garland, Circuit 
Judges.

 Opinion for the Court filed by Circuit Judge Garland.

 Garland, Circuit Judge: Appellant Herbert Schoenbohm 
operates an amateur radio station in the U.S. Virgin Islands. 
In 1992, he was convicted of a felony for fraudulently using 
counterfeit access codes to obtain long distance telephone 
services.1 In 1994, shortly before Schoenbohm's amateur 
radio licenses were due to expire, he filed a renewal applica-
tion with the Federal Communications Commission (FCC).

 After a series of hearings, an administrative law judge 
(ALJ) denied Schoenbohm's application. On June 29, 1998, 
the Commission affirmed the denial, finding that Schoen-
bohm's fraud conviction, "in combination with" his misrepre-
sentations and lack of candor during the renewal proceedings, 
justified nonrenewal. Herbert L. Schoenbohm, 13 F.C.C.R. 
15,028, 15,028 (1998) [hereinafter Decision]. Schoenbohm 
filed a petition for reconsideration, reiterating arguments he 
had previously made and asking for the first time that the 
FCC investigate allegations that some of his detractors may 
have had improper ex parte contacts with the ALJ. See J.A. 
at 77. The FCC denied reconsideration, restating its previ-
ous justifications for nonrenewal and rejecting the request for 
an inquiry into the ex parte allegations. See Herbert L. 
Schoenbohm, 13 F.C.C.R. 23,774, 23,777 (1998) [hereinafter 
Reconsideration Order].

 Schoenbohm contends that the denials of both his renewal 
application and his petition for reconsideration were arbitrary 
and capricious agency actions, in violation of the Administra-

__________
 1 Schoenbohm was found guilty of violating 18 U.S.C. 
s 1029(a)(1), which provides that anyone who "knowingly and with 
intent to defraud produces, uses, or traffics in one or more counter-
feit access devices" commits a felony. The statute defines "access 
device" as "any card, plate, code, account number, ... or other 
means of account access that can be used ... to obtain money, 
goods, services, or any other thing of value." Id. s 1029(e)(1). An 
access device is "counterfeit" if it is "counterfeit, fictitious, altered, 
or forged." Id. s 1029(e)(2).

tive Procedure Act, 5 U.S.C. s 706(2)(A). We affirm the 
FCC's refusal to renew Schoenbohm's radio licenses and 
conclude that we are without jurisdiction to review the rejec-
tion of his petition for reconsideration.

 I

 We begin with the FCC's denial of Schoenbohm's renewal 
application. Before reaching the merits of that decision, 
however, we must resolve a preliminary question of jurisdic-
tion. The Commission argues that Schoenbohm did not 
appeal from its original decision to deny his renewal applica-
tion, but only from its order denying his petition to reconsider 
that decision. Denial of a petition for reconsideration, the 
agency correctly notes, is generally nonreviewable unless the 
request for reconsideration was based on new evidence or 
changed circumstances. See ICC v. Brotherhood of Locomo-
tive Eng'rs, 482 U.S. 270, 279-80 (1987); Southwestern Bell 
Tel. Co. v. FCC, 180 F.3d 307, 311 (D.C. Cir. 1999); see also 
Entravision Holdings, LLC v. FCC, No. 99-1025, slip op. at 4 
& n.* (D.C. Cir. Feb. 11, 2000) (holding that nonreviewability 
in this context means lack of jurisdiction).

 It is true that the notice of appeal Schoenbohm filed in this 
court characterizes his appeal as being from the order deny-
ing the petition for reconsideration. See J.A. at 85. It is also 
true that in Southwestern Bell, where the petition for review 
designated only the reconsideration order, we held both that 
the reconsideration order was nonreviewable and that the 
underlying order was not properly before us. See Southwest-
ern Bell, 180 F.3d at 313-14. We did not, however, suggest 
that the failure to designate an order in a petition for review 
(or notice of appeal) is always fatal. To the contrary, "we 
said in Southwestern Bell Telephone Co. v. FCC [that] a party 
may demonstrate its intention to appeal from one order 
despite referring only to a different order in its petition for 
review if the petitioner's intent 'can be fairly inferred' from 
the petition or documents filed more or less contemporane-
ously with it." Martin v. FERC, 199 F.3d 1370, 1372 (D.C. 

Cir. 2000) (quoting Southwestern Bell, 180 F.3d at 313 (quot-
ing Brookens v. White, 795 F.2d 178, 180 (D.C. Cir. 1986))).

 Here, Schoenbohm's intent to appeal from the underlying 
decision (as well as from the denial of reconsideration) is 
fairly inferable from the "concise statement of reasons," 
required by 47 U.S.C. s 402(c), that he filed together with his 
notice of appeal. That statement expressly lists each of his 
challenges to the underlying decision, including arguments 
that the FCC erred in relying on his criminal conviction and 
in finding that he lacked candor in his testimony before the 
agency. It also separately challenges the agency's refusal to 
investigate his allegations of improper ex parte contacts with 
the ALJ. See J.A. at 85-86. Schoenbohm's ancillary filing 
therefore makes this case like Damsky v. FCC, in which we 
recently inferred an appellant's intent to appeal an underlying 
decision from the fact that her concise statement of reasons 
challenged the substantive merits of that decision. See 199 
F.3d 527, 533 (D.C. Cir. 2000); see also Martin, 199 F.3d at 
1373 (holding that petitioner's intent to seek review of under-
lying order was fairly inferable from his contemporaneously 
filed motion for stay). At the same time, it makes this case 
unlike Southwestern Bell, where there was no such challenge 
in any filing "prior to the brief filed in this court." South-
western Bell, 180 F.3d at 313.

 Because Schoenbohm's intent to appeal the FCC's underly-
ing decision can reasonably be inferred from his concise 
statement of reasons, and because for the same reason the 
FCC "cannot claim that any notice defects surprised or 
misled it with regard to the issues [appellant] intended to 
raise on appeal," we conclude that we have jurisdiction to 
review the FCC's decision to deny renewal of Schoenbohm's 
amateur radio licenses. Damsky, 199 F.3d at 533.

 II

 We review the merits of the FCC's decision only to deter-
mine whether the decision was "arbitrary, capricious, an 
abuse of discretion, or otherwise not in accordance with law," 
5 U.S.C. s 706(2)(A). We review the factual findings upon 

which the decision was based to ensure that they were 
supported by "substantial evidence," id. s 706(2)(E). See 47 
U.S.C. s 402(g); Damsky, 199 F.3d at 533. "Substantial 
evidence," in turn, is defined as "such relevant evidence as a 
reasonable mind might accept as adequate to support a 
conclusion." Consolo v. Federal Maritime Comm'n, 383 U.S. 
607, 620 (1966) (quoting Consolidated Edison Co. v. NLRB, 
305 U.S. 197, 229 (1938)). Because this standard is "some-
thing less than the weight of the evidence, ... the possibility 
of drawing two inconsistent conclusions from the evidence 
does not prevent an administrative agency's finding from 
being supported by substantial evidence." Id.

 In the following sections, we apply these principles to each 
of Schoenbohm's challenges to the FCC's refusal to renew his 
radio licenses.

 A

 Schoenbohm's first contention is that it was arbitrary and 
capricious for the FCC to deny renewal based on his criminal 
conviction. In 1990, the Commission modified its "character" 
policy to provide that "evidence of any conviction for miscon-
duct constituting a felony will be relevant to our evaluation of 
an applicant's or licensee's character." Policy Regarding 
Character Qualifications in Broadcast Licensing, 5 F.C.C.R. 
3252, 3252 (1990) (footnote omitted) [hereinafter Character 
Policy]. Such evidence is relevant, the FCC said, because it 
aids the Commission in ascertaining whether a licensee will 
"deal truthfully with the Commission and ... comply with 
[its] rules and policies." Id. (quoting 102 F.C.C.2d 1179, 
1190-91 (1986)). Rather than establish a " 'hierarchy' of 
felonies that might arise in individual cases," the Commission 
examines the impact of a conviction on a case-by-case basis. 
Id.

 There is nothing unreasonable about the FCC's conclusion 
that Schoenbohm's felony conviction was relevant to his li-
cense renewal. A conviction for fraudulent conduct plainly 
calls into question a licensee's ability to act in a manner 
consonant with FCC regulations. As the Commission ob-
served, fraud "is a subject area the Commission has tradition-

ally considered to be pertinent to its evaluation of a licensee's 
character." Decision, 13 F.C.C.R. at 15,038. Schoenbohm 
argues, however, that the Commission acted arbitrarily in 
judging his conviction not just relevant, but sufficient to 
justify denial, since in other cases it has renewed a license or 
granted a permit despite an applicant's felony conviction 
when the applicant showed evidence of rehabilitation. See, 
e.g., Richard Richards, 10 F.C.C.R. 3950 (Rev. Bd. 1995); 
Alessandro Broad. Co., 99 F.C.C.2d 1 (Rev. Bd. 1984). Ac-
cording to appellant, he too established his rehabilitation.

 The FCC's policy does acknowledge rehabilitation as a 
mitigating factor in assessing an applicant's character. See 
Character Policy, 5 F.C.C.R. at 3252 & n.4. Here, however, 
the FCC found that Schoenbohm demonstrated an absence of 
rehabilitation by making deliberate misrepresentations and 
displaying a lack of candor during the renewal proceedings. 
See Decision, 13 F.C.C.R. at 15,038. Moreover, because 
these occurred in the course of the agency's own proceedings, 
they were a rationale for nonrenewal that went beyond the 
felony conviction alone. See id. Commission regulations 
forbid applicants from "mak[ing] any misrepresentation or 
willful material omission bearing on any matter...." 47 
C.F.R. s 1.17; see also 47 U.S.C. s 312(a)(1). A licensee's 
complete candor is important to the FCC because "effective 
regulation is premised upon the agency's ability to depend 
upon the representations made to it by its licensees." Leflore 
Broad. Co. v. FCC, 636 F.2d 454, 461 (D.C. Cir. 1980); see 
also Character Policy, 5 F.C.C.R. at 3253. Accordingly, it is 
well recognized that the Commission may disqualify an appli-
cant who deliberately makes misrepresentations or lacks can-
dor in dealing with the agency. See Swan Creek Communi-
cations, Inc. v. FCC, 39 F.3d 1217, 1221-24 (D.C. Cir. 1994); 
Garden State Broad. Ltd. v. FCC, 996 F.2d 386, 393-94 (D.C. 
Cir. 1993). The FCC's findings with respect to Schoenbohm's 
misrepresentations and lack of candor are therefore more 
than sufficient to distinguish this case from the precedents he 
cites.

 B

 Schoenbohm does not dispute that if he had made misrep-
resentations to the Commission, that fact, together with his 
fraud conviction, would have justified nonrenewal. Instead, 
he disputes that he made any misrepresentations. The FCC 
found to the contrary in connection with two aspects of his 
presentations to the Commission.

 First, the Commission determined that Schoenbohm made 
misrepresentations and lacked candor in testifying about the 
nature of his prior felony. As the Third Circuit noted in 
affirming his conviction, Schoenbohm was found guilty of 
violating 18 U.S.C. s 1029(a)(1) because he "used a counter-
feit access device." United States v. Schoenbohm, No. 
93-7516, slip op. at 3 (3d Cir. Apr. 18, 1994) (emphasis added). 
Schoenbohm effectively conceded this in his first written 
submission to the Commission, stating that he was "convicted 
for defrauding a telephone resale service provider by ... 
making unauthorized long distance calls." Schoenbohm Aff. 
at 1 (Aug. 8, 1995) (J.A. at 160). In subsequent presenta-
tions, however, Schoenbohm described his conviction differ-
ently. In a July 18, 1995 affidavit he said:

 I did not steal any money or cause the account of any 
 subscriber to be debited. I was convicted solely of 
 having knowledge in my mind of certain telephone codes 
 of which 4 of the 6 digits were said to be similar to those 
 that could be used to make long distance calls without 
 paying for them.
 
Schoenbohm Aff. at 2 (J.A. at 185) (emphasis added). And in 
oral testimony before the Commission, he characterized his 
conviction as based on his possession of "numbers in my 
mind," rather than on the performance of any unlawful act. 
Decision, 13 F.C.C.R. at 15,031 (quoting Tr. at 38).

 On the basis of this evidence, the FCC found that Schoen-
bohm had intentionally portrayed his crime in a misleading 
manner in order to minimize its significance. Schoenbohm 
maintains that he was not attempting to mislead, but rather 
was simply trying to explain that his crime involved numeric 
codes rather than mechanical devices. Although that is not 

an impossible reading of his testimony, it was certainly rea-
sonable for the FCC to reach a contrary conclusion.

 The FCC also found that Schoenbohm misrepresented the 
facts and lacked candor in connection with an inquiry the ALJ 
made into whether he had attempted to violate the agency's 
ex parte rules--by urging others to ask the Virgin Islands' 
congressional delegate to intervene with the FCC on his 
behalf.2 The ex parte rules prohibit a party in specified 
proceedings (including the proceedings at issue here) from 
making written presentations to the Commission without 
serving them on the other parties, and from making oral 
presentations without notice and an opportunity for the oth-
ers to be present. See 47 C.F.R. ss 1.1202, 1.1208. They 
also provide that "[n]o person shall solicit or encourage others 
to make any presentation which he or she is prohibited from 
making...." Id. s 1.1210.

 In a radio conversation with another amateur operator, 
Schoenbohm was tape recorded as saying:

 I'm not allowed under ex-parte rules to ask for assistance 
 of ... people in political positions but other people if 
 they feel that government is overbearing or I'm being 
 treated unfairly, have every right to point this out to 
 their elected representatives.
 
J.A. at 175. He also told the other operator:

 I'm not permitted at this time because of ex-parte rules 
 to make any requests of political intervention. Other 
 people could do it if they are so disposed but I can't do it. 
 Go ahead.
 
Id. Schoenbohm then spelled out the congressional dele-
gate's name, and provided an address and telephone number 
at which he could be reached. Id.

__________
 2 This inquiry is distinct from the inquiry Schoenbohm himself 
requested, which would have investigated whether opponents of his 
application had engaged in ex parte communications with the ALJ. 
See discussion infra Part III.

 When asked to explain this conversation, Schoenbohm told 
the ALJ that he intended only to share his newly acquired 
knowledge regarding the ex parte rules, and that he did not 
intend to encourage an ex parte solicitation on his behalf. 
See Herbert L. Schoenbohm, 11 F.C.C.R. 1146, 1148-49 (1996) 
(initial decision of ALJ). Later, he submitted an affidavit 
reiterating that he was simply "expounding on [his] newly 
discovered knowledge of the ex parte rules," and was not 
asking anyone to make a contact. Schoenbohm Aff. p 8 (Feb. 
1997) (J.A. at 191). Once again, although it is not impossible 
that Schoenbohm intended to do no more than declare his 
understanding of the law, the record provides substantial 
evidence to support the FCC's finding that this explanation 
was less than candid, and that he was in fact trying to solicit 
others to make ex parte submissions on his behalf.

 Schoenbohm further contends that because there is no 
evidence that any ex parte contacts actually occurred, he "is 
being punished simply for uttering words to a friend in the 
course of a private amateur radio conversation." Schoen-
bohm Br. at 13-14. This, he argues, violates the First 
Amendment. He is wrong for two reasons. First, the agen-
cy's ex parte rules do not interfere with Schoenbohm's right 
to discuss the proceedings with others; they merely require 
that communications with the agency be on the record. As 
the FCC correctly concluded, "rules intended to protect the 
integrity of the administrative process by requiring that 
presentations to the agency be made on the record and that 
solicitations of such presentations be limited to requests for 
on-the-record presentations d[o] not violate the First Amend-
ment." Reconsideration Order, 13 F.C.C.R. at 23,775; see 
California Motor Transp. Co. v. Trucking Unlimited, 404 
U.S. 508, 513 (1972) (stating that although the First Amend-
ment protects the right of access to agencies and courts, it 
does not immunize from proscription "practice[s] which may 
corrupt the administrative or judicial processes"); cf. Nation-
al Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 697 
(1978) (noting that although "an injunction against price 
fixing abridges the freedom of businessmen to talk to one 

another about prices," the First Amendment does not make it 
impossible to enforce the antitrust laws).

 Moreover, and more fundamentally, the FCC did not deny 
Schoenbohm's renewal application because he violated, or 
attempted to violate, the ex parte rules. Nor did it do so 
because of what he said to his fellow radio operator. Rather, 
the FCC denied the application because Schoenbohm made 
misleading statements to the agency itself, and it is well 
established that the First Amendment does not protect mis-
representations made in administrative adjudications. See 
California Motor Transp., 404 U.S. at 512-13.

 For the foregoing reasons, we conclude there was substan-
tial evidence to support the FCC's findings that Schoenbohm 
made misrepresentations and lacked candor in his testimony 
regarding both his felony conviction and his efforts to induce 
ex parte communications with the Commission. We further 
conclude that the FCC acted reasonably in deciding that 
Schoenbohm's "lack of candor and misrepresentation along 
with the felony conviction together" justified nonrenewal of 
his licenses. Decision, 13 F.C.C.R. at 15,038.

 III

 Following the FCC's original decision denying his license 
renewal on June 29, 1998, Schoenbohm petitioned the agency 
for reconsideration. In addition to restating his previous 
arguments, he asked for the first time that the Commission 
investigate whether amateur operators who disliked him had 
themselves communicated with the ALJ ex parte, seeking to 
have his application denied. In support of this request, 
Schoenbohm stated that on January 17, 1998 he had made a 
tape recording of a conversation between two amateur opera-
tors which, he asserted, indicated that his detractors were 
making calls to the ALJ. See Pet. for Recons. pp 5, 6 (J.A. at 
77).

 The FCC rejected Schoenbohm's request for an inquiry on 
two grounds. First, the agency held it untimely because it 
was based neither on changed circumstances nor on newly 
discovered facts. As the FCC noted, Schoenbohm's request 

relied on a conversation he had taped more than six months 
before the Commission's decision on his renewal application. 
See Reconsideration Order, 13 F.C.C.R. at 23,775. Second, 
the FCC rejected Schoenbohm's request on the ground that 
the tape-recorded conversation "d[id] not provide probative 
evidence that anyone contacted or attempted to contact [the 
ALJ], let alone that any such contact reached the Judge." 
Id. at 23,776. Schoenbohm's allegation, the FCC said, was 
based "solely on hearsay, speculation, and rumor." Id.

 In ICC v. Brotherhood of Locomotive Engineers (BLE), the 
Supreme Court held that an agency's denial of a petition for 
reconsideration is nonreviewable unless the petition was 
based on "new evidence or changed circumstances." 482 U.S. 
at 284. Included within the ambit of nonreviewable decisions 
were those concerning matters that, even though "newly 
raised," were "previously available." Id. at 283. The Court 
treated nonreviewability under such circumstances as juris-
dictional, see id. at 287, a point this circuit confirmed in 
Entravision Holdings, LLC v. FCC, No. 99-1025, slip op. at 4 
n.*.

 Schoenbohm does not contend that his petition for recon-
sideration was based on "new evidence" in the sense of 
evidence not "previously available" to him. To the contrary, 
it is apparent on the face of the petition that the evidence 
upon which he relied--the tape recording of an amateur radio 
transmission--was previously available. As the FCC noted, 
the petition states that Schoenbohm made the recording on 
January 17, 1998--six months before the FCC rendered its 
original decision on his renewal application. Schoenbohm 
could have, and under FCC rules should have, submitted this 
evidence prior to that decision.3 He failed to do so, and on 

__________
 3 See 47 C.F.R. s 1.1214 ("Any party to a proceeding ... who has 
substantial reason to believe that any violation of [the ex parte 
rules] has been solicited, attempted, or committed shall promptly 
advise the Office of General Counsel in writing of all the facts and 
circumstances which are known to him or her."); see also 47 C.F.R. 
s 1.65(a) ("Each applicant is responsible for the continuing accuracy 
and completeness of information furnished in a pending application 

appeal does not respond to the FCC's contention that this 
omission deprives us of jurisdiction. This is not a case, 
therefore, in which nonreviewability means that "petitioner 
will have been deprived of all opportunity for judicial consid-
eration ... of facts which, through no fault of his own, the 
original proceeding did not contain." BLE, 482 U.S. at 279. 
Here, the fault is solely that of petitioner, and because his 
petition was not based on new evidence or changed circum-
stances, we are without jurisdiction to review its denial.4

 IV

 The FCC's decision denying appellant's application for 
renewal of his amateur radio licenses is affirmed. Insofar as 
appellant also appeals from the FCC's refusal to reconsider 
that decision, we dismiss that appeal for lack of jurisdiction. 
See BLE, 482 U.S. at 284, 287; Entravision Holdings, No. 
99-1025, slip op. at 4 n.*.

__________
or in Commission proceedings involving a pending application.... 
Whenever there has been a substantial change as to any other 
matter which may be of decisional significance in a Commission 
proceeding involving the pending application, the applicant shall as 
promptly as possible ... submit a statement furnishing such 
additional or corrected information as may be appropriate....").

 4 In this case, little turns on whether we hold that the court lacks 
jurisdiction, or whether we consider the issue on the merits. Even 
if we were to consider the merits, BLE instructs that we must 
uphold an agency's decision to deny reconsideration unless there 
was the clearest abuse of discretion. See 482 U.S. at 278; see also 
Southwestern Bell, 180 F.3d at 311; Beehive Tel. Co. v. FCC, 180 
F.3d 314, 319-20 (D.C. Cir. 1999). It would be difficult to find such 
an abuse in a case like this, where the agency's denial was based 
both on the unexcused untimeliness of the appellant's submission 
and on its lack of probative support.