SMALL BUSINESS IN
TELECOMMUNICATIONS, Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents.

No. 99–1543.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 11, 2001.

Decided June 8, 2001.

Robert H. Schwaninger, Jr. argued the cause for the petitioner.

Roberta L. Cook, Counsel, Federal Communications Commission, argued the cause for the respondents. Christopher J. Wright, General Counsel, and Daniel M. Armstrong, Associate General Counsel, Federal Communications Commission, A. Douglas Melamed, Acting Assistant Attorney General, and Catherine G. O'Sullivan and Andrea Limmer, Attorneys, United States Department of Justice, were on brief.

Before HENDERSON, ROGERS and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The petitioner, Small Business in Telecommunications (SBT), seeks to challenge rulemaking orders of the Federal Communications Commission (FCC or Commission) that, *inter alia*, devised service and competitive bidding rules as well as technical and operational rules for 800 MHz Specialized Mobile Radio (SMR) service.[1] For the reasons set forth below, we dismiss the petition for review with respect to the *Upper Channel First Reconsideration Order* and deny the petition with respect to the *Lower Channel Report and Order*

---

1. The rulemakings include: *In the Matter of Amendment of Part 90 of the Commission's Rules to Facilitate Future Development of SMR Systems in the 800 MHz Frequency Band, Second Report and Order*, 12 F.C.C.R. 19,079, 1997 WL 391816 (1997) [*Lower Channel Report and Order*], *In the Matter of Amendment of Part 90 of the Commission's Rules to Facilitate Future Development of SMR Systems in the 800 MHz Frequency Band, Memoran-* *dum Opinion and Order on Reconsideration*, 12 F.C.C.R. 9972, 1997 WL 397793 (1997) [*Upper Channel First Reconsideration Order*] and *In the Matter of Amendment of Part 90 of the Commission's Rules to Facilitate Future Development of SMR Systems in the 800 MHz Frequency Band, Memorandum Opinion and Order on Reconsideration*, 14 F.C.C.R. 17,566 (1999) [*Lower Channel Reconsideration Order*].

and the *Lower Channel Reconsideration Order*.

## Background

In 1974 the FCC created the SMR service. SMR licensees use bandwidth[2] in the 800 MHz and 900 MHz ranges to provide "land mobile communications services" on a commercial basis. 47 C.F.R. § 90.7. In order to accommodate new uses of the bandwidth, including cellular telephone and data transmission services, and to respond to changes in statutory law, *see Fresno Mobile Radio, Inc. v. FCC*, 165 F.3d 965, 967 (D.C.Cir.1999), in 1995 the Commission adopted a regime for the upper 200 channels of the SMR bandwidth which planned to auction licenses for each of 175 newly-designated Economic Areas (EA). Each EA license includes a large block of spectrum[3] for an entire geographic area, thereby making transmitter-by-transmitter and channel-by-channel licensing unnecessary. To help EA licensees obtain the contiguous spectrum needed to provide competitive wide-area services, the Commission determined that any EA licensee can require any incumbent SMR licensee to relocate to the lower 230 channels of the SMR spectrum, provided the EA licensee gives the displaced licensee comparable facilities and spectrum, pays its relocation expenses and ensures a "seamless" transition between the old and new frequencies. *See In the Matter of Amendment of Part 90 of the Commission's Rules to Facilitate Future Development of SMR Systems in the 800 MHz Frequency Band,*

*First Report and Order*, 11 F.C.C.R. 1463, 1995 WL 853313 (1995). Although the Commission adhered to the new regulatory scheme for the upper 200 channels of SMR bandwidth, it ultimately changed its procedure to give small businesses an advantage in the auction process by allowing bidding credits for which only small businesses could qualify.[4] It maintained its two-tiered definitions of small business but adjusted for the deletion of the installment payment plan. *See Upper Channel First Reconsideration Order*, 12 F.C.C.R. 9972, ¶ ¶ 125–34.

In June 1997 the Commission adopted a similar set of rules for the lower 230 channels. Again, the FCC decided to auction the new EA licenses, each of which was intended to cover a wide geographic area and a large block of spectrum. As before, the Commission decided to aid small businesses with bidding credits but deferred deciding whether to eliminate installment payments. It again used the two-tiered definitions of small business based on average gross revenue. The FCC also required an EA licensee displacing an incumbent licensee to reimburse the incumbent for relocation expenses. *See Lower Channel Report and Order*, 12 F.C.C.R. 19,079, ¶ ¶ 123–25, 272–87.

On September 2, 1997 the petitioner filed two petitions for reconsideration. One requested the FCC to reconsider portions of the *Lower Channel Report and Order* while the other sought reconsideration of the *Upper Channel First Reconsid-*

---

2. Bandwidth is "[t]he capacity of a telecom line to carry signals. The necessary bandwidth is the amount of spectrum required to transmit the signal without distortion or loss of information. FCC rules require suppression of the signal outside the band to prevent interference." Federal Communications Comm'n, *What We're All About: A Consumer's Guide to the FCC* (*FCC Handbook*) 2001, available at http://www.fcc.gov/cib/handbook.html.

3. Spectrum is "[t]he range of electromagnetic radio frequencies used in the transmission of sound, data and television." *FCC Handbook, supra.*

4. Previously it had allowed them to pay for their license in installments.

*eration Order.* On October 24, 1997 the petitioner filed a "Consolidated Supplement to Petitions for Reconsideration," contending that the FCC failed to obtain the requisite approval of its "small business" definitions from the Small Business Administration (SBA). JA 563. The last paragraph of the Consolidated Supplement requested "that the Commission reconsider its *Orders* in accord with the foregoing, obtain necessary prior approval from the Small Business Administration, provide necessary time prior to the scheduling of its auction in accord with 47 U.S.C. § 309(j)(3)(E) [*sic*], and take such other action that is necessary to cause its decisions and *Orders* to be rendered in accord with applicable statutory law." JA 566.

On October 8, 1999 the FCC issued its *Lower Channel Reconsideration Order,* in which it addressed the issues raised both in SBT's petition for reconsideration of the *Lower Channel Report and Order* and in SBT's Consolidated Supplement. The Commission rejected the petitioner's contention that the failure to obtain SBA approval of the "small business" definitions suspended the operation of the *Lower Channel Report and Order* until the SBA's approval was secured, explaining that the SBA had by then approved the definitions. *Lower Channel Reconsideration Order,* 14 F.C.C.R. 17,566, ¶ 87 n. 251. The Commission also "reiterated that payment of relocation costs" by an EA licensee to an incumbent licensee "will not be due until the incumbent has been fully relocated and the frequencies are free and clear." *Id.* at ¶ 58. On October 19, 1999 the petitioner filed a petition for review of both the *Lower Channel Reconsideration Order* and the *Lower Channel Report and Order* as well as the *Upper Channel First Reconsideration Order. See Small Business in Telecommunications v. FCC,* No. 99–1419 (D.C.Cir. filed Oct. 19, 1999). The respondents moved to dismiss on the ground that the petition was premature because the

*Lower Channel Reconsideration Order* had not yet been published in the Federal Register. The petitioner then moved for voluntary dismissal, which the court granted. The *Lower Channel Reconsideration Order* was subsequently published in the Federal Register on December 20, 1999. 64 Fed. Reg. 71,042.

On December 2, 1999 the FCC issued its *Upper Channel Second Reconsideration Order,* denying the petitioner's petition for reconsideration of the *Upper Channel First Reconsideration Order.* The Commission stayed with its decision to eliminate installment payments, rejecting the contention that installment payments were necessary to ensure "a meaningful opportunity" for small businesses to participate in the 800 MHz SMR auction. *See In the Matter of Amendment of Part 90 of the Commission's Rules to Facilitate Future Development of SMR Systems in the 800 MHz Frequency Band, Second Memorandum Opinion and Order on Reconsideration,* 14 F.C.C.R. 21,068, ¶ 3, 1999 WL 1080279 (1999) [*Upper Channel Second Reconsideration Order*]. The *Upper Channel Second Reconsideration Order* was published in the Federal Register on July 14, 2000.

On December 29, 1999 the petitioner filed a petition "for review of the Federal Communications Commission's *Memorandum Opinion and Order on Reconsideration In the Matter of Amendment of Part 90 of the Commission's Rules; Implementation of Sections 3(n) and 332 of the Communications Act; and Implementation of Section 309(j) of the Communications Act* adopted on September 30, 1999 [*Lower Channel Reconsideration Order*]." *Petition for Review,* No. 99–1543 (filed Dec. 29, 1999). On January 6, 2000 the petitioner filed a "Certificate as to Parties, Rulings and Related Cases," noting the above cited *Lower Channel Reconsidera-*

*tion Order* as well as the *Lower Channel Report and Order. Certificate as to Parties, Rulings and Related Cases,* No.99–1543 (filed Jan. 6, 2000). On April 24, 2000 the petitioner moved to amend the Certificate to "include Amendment of Part 90 of the Commission's Rules to Facilitate Future Development of SMR Systems in the 800 MHz Frequency Band, PR Docket No. 93–144, *Memorandum Opinion and Order on Reconsideration,* 12 FCC Rcd 9972 (1997) [*Upper Channel First Reconsideration Order*], as a ruling under review." *Motion to Amend Certificate as to Parties, Rulings and Related Cases,* No. 99–1543 (filed Apr. 24, 2000). The petitioner's motion declared that the *Upper Channel First Reconsideration Order* "is an underlying Order to the [*Lower Channel Reconsideration Order*] released on October 8, 1999 in the same matter, which order is the primary order on review in the above-captioned case." *Id.* The motion was granted on April 28, 2000.

### Discussion

The petitioner argues that in issuing the *Lower Channel Report and Order, Lower Channel Reconsideration Order* and *Upper Channel First Reconsideration Order,* the FCC violated (1) 15 U.S.C. § 632(a)(2)(C)(iii) and 5 U.S.C. § 553(d) by failing to obtain prior SBA approval of its "small business" definitions, (2) 47 U.S.C. § 309(j) by failing to allow interested parties sufficient time to participate in the 800 MHz SMR auction and (3) 5 U.S.C. § 604(a)(5) by failing to address the economic impact of relocation on "small business" incumbent licensees. Because we dispose of the petitioner's challenges to the upper and lower channel orders in different ways, we address the orders separately.

### A. Upper Channel First Reconsideration Order

█ The Federal Rules of Appellate Procedure "govern procedure in the United States courts of appeal," Fed. R.App. P. 1, as do the Circuit Rules of our Circuit. *See* Circuit Rule 1. Rule 15(a) of the Federal Rules of Appellate Procedure requires that a petition for review "specify the order or part thereof to be reviewed." Fed. R.App. P. 15(a)(2)(C). "Failure to specify the correct order can result in dismissal of the petition." *Entravision Holdings, LLC v. FCC,* 202 F.3d 311, 312 (D.C.Cir.2000). "A mistaken or inexact specification of the order to be reviewed will not be fatal to the petition, however, if the petitioner's intent to seek review of a specific order can be fairly inferred from the petition for review or from other contemporaneous filings, and the respondent is not misled by the mistake." *Id.* at 313 (collecting cases). It is undisputed that the petitioner failed to specify the *Upper Channel First Reconsideration Order* in its petition for review filed December 29, 1999.[5] Accordingly, we examine not only the petition for review but also other documents contemporaneously filed therewith to determine whether we can fairly infer the petitioner's intent to seek review of the *Upper Channel First Reconsideration Order.* Our caselaw provides instructions for undertaking this task.

In *Entravision Holdings LLC v. FCC,* the petitioner, Entravision, specified only the order denying reconsideration and not the underlying order it later sought to challenge in its brief. *Entravision,* 202 F.3d at 312. Even though Entravision's petition noted the underlying order in setting out the history of the proceedings, the court held that it could not determine

---

**5.** As already noted, although the petitioner's October 19, 1999 petition for review included the Upper Channel First Reconsideration Or-

der, the petitioner voluntarily dismissed that petition on December 20, 1999.

whether Entravision intended to seek review of the underlying order. It then looked at Entravision's contemporaneous filings. *See id.* at 314. Entravision's docketing statement,[6] filed within one month of its petition, also specified only the reconsideration order. Additionally, Entravision's "Preliminary Statement of Issues,"[7] filed the same day, identified only two issues, "both of which relate[d] exclusively to the Commission's denial of reconsideration." *Id.* After looking at the contemporaneously filed documents as well as the petition for review, the court concluded that it "cannot fairly infer that [Entravision] intended to seek review of the [underlying order]." *Id.*

By contrast, in *Martin v. FERC,* 199 F.3d 1370, 1371–73 (D.C.Cir.2000), the court held that the petitioner's intent to seek review of the Certificate Order, instead of the Rehearing Order specified in its petition, was evident from a contemporaneously filed (same day) motion to stay. The court found that by attaching to the motion a copy of his application for rehearing, in which the petitioner took issue with the Certificate Order, the petitioner had sufficiently identified the Certificate Order as the order from which his challenge to the Commission action arose. Additionally, the court found that the nature of the motion to stay itself sufficed to indicate that the petitioner's purpose in filing his petition for review was to obtain review of the Certificate Order. The court also

looked at the docketing statement which "indicated he was challenging the Certificate Order as well as the Rehearing Order." *Id.* at 1373. Finally, the court found that the Commission understood the petitioner to be challenging the Certificate Order as was apparent from its responsive filings. *See id.; see also Schoenbohm v. FCC,* 204 F.3d 243, 245–46 (D.C.Cir.2000) (fair to infer intent from "concise statement of reasons" required by 47 U.S.C. § 402(c) to be filed together with notice of appeal, which failed to specify correct decision).

We came to the opposite conclusion in *Southwestern Bell Telephone Co. v. FCC,* 180 F.3d 307, 313 (D.C.Cir.1999). There, the petitioner, Southwestern Bell, requested the court to consider its petition for review of a reconsideration order, which the court held was unreviewable, to include an investigation order, which was reviewable. The court denied the request. It noted that the petition for review named only the reconsideration order and only that order was appended to the petition, *see id.,* and that the docketing statement mentioned and attached only the reconsideration order. Finally, the court stated that Southwestern Bell's Preliminary Statement of Issues both began and ended by referring to the reconsideration order and included only those issues raised in its petition for reconsideration. The court concluded: "In short, nothing prior to the brief filed in this court (by appellate coun-

---

6. Under D.C. Circuit Rules the docketing statement "must be on a form furnished by the clerk's office and contain such information as the form prescribes" including case name, type of case and identifying information about the order to be reviewed. Circuit Rule 15(c). "Attached to the docketing statement must be a provisional certificate ... setting forth the information required by Circuit Rule 28(a)(1)," which includes parties and amici, rulings under review and related cases. Circuit Rule 15(a)(3); *see* Circuit Rule 28(a)(1).

7. The court routinely requests a "Preliminary Statement of Issues" as part of the information included with the Docketing Statement. *See* Circuit Rule 15(c)(2); D.C. Circuit Handbook of Practice and Internal Procedures §§ IV.A3 & IV.B, at 21–22 ("The docketing statement includes ... a non-binding preliminary statement of the issues involved...."); *see also United States v. Pogue,* 19 F.3d 663, 666 & n. 2 (D.C.Cir.1994) (per curiam).

sel) gave the Commission any notice of Southwestern Bell's intent to seek review of the Investigation Order. Nor should that intent have been obvious." *Id.*

In *City of Benton v. NRC*, 136 F.3d 824 (D.C.Cir.1998) (per curiam), the petitioner conceded that it had named the wrong order in its petition. Nevertheless, it argued that the Nuclear Regulatory Commission was not prejudiced because the agency knew which order it wanted to challenge. The court explained that "[w]hichever order ACC *intended* to ask the court to review, it named the wrong order in its petition. Fed. R.App. P. 15(a) requires that ACC's petition be dismissed for failing properly to designate the order to be challenged." *Id.* at 826 (emphasis original). The court, citing *John D. Copanos & Sons, Inc. v. FDA*, 854 F.2d 510, 527 (D.C.Cir.1988), noted that a petition for review designating only one order issued in an administrative proceeding was not adequate to obtain review of any other order included in the same administrative record. The court rejected the reasoning of *Castillo-Rodriguez v. INS*, 929 F.2d 181, 183 (5th Cir.1991) (refusing "to allow a mere technicality in pleading to result in a denial of an opportunity for petitioner to obtain a decision on the merits" and concluding "that we should treat the petition for review of the immigration judge's order as 'effective, although inept, attempt' to seek review of the final order of the Board"), and dismissed the petition.

■ These cases illustrate that the court considers not only the contents of the petition for review but also any documents affixed thereto or filed contemporaneously therewith in ascertaining the petitioner's intent. Here SBT failed to designate in its petition for review the order that it ultimately challenged in its brief. SBT's "Petition for Review" named only the *Lower Channel Reconsideration Order*; it included neither the *Upper Channel First Reconsideration Order* nor the *Upper Channel Second Reconsideration Order*. SBT attached only the *Lower Channel Reconsideration Order* to its petition. Likewise, SBT's "Certificate As To Parties, Rulings and Related Cases," filed January 6, 1999, failed to mention either upper channel order; the Certificate designated only the *Lower Channel Reconsideration Order* and the underlying *Lower Channel Report and Order*.[8]

SBT also filed a "Docketing Statement" on January 6, 1999, listing the docket numbers as "PR Doc. No. 93–144; GN Doc. No. 93–252; PP Doc. No. 93–253." In *Entravision, Martin* and *Southwestern Bell*, the court considered the Docketing Statement as a contemporaneous filing from which it could infer the petitioner's intent. Although the two lower channel and two upper channel orders at issue share the same docket number, the manner in which the petitioner described the dates of the orders indicates to us that it sought review of the lower channel orders only. It described the orders as: "Released Dates: MO&O, 10/8/99; Second Order, 7/10/97." Its use of "Second Order" instead of "Second Orders" or "Second Order and Reconsideration Order" manifests that it sought review of only one of the July 10, 1997 orders. SBT's description of the challenged order as "Second Order" also indicates that it sought review of the *Lower Channel Report and Order*, which was entitled "*Second* Report and

---

**8.** The "Statement of Issues" which prefaced the Certificate did include two issues that referred to "the FCC's scheduling of the 800 MHz auction." *Requested Information*, No. 99–1543 (filed Jan. 6, 2000). The petitioner did not argue, and we do not find, that these references allow us to fairly infer that the petitioner sought review of the *Upper Channel First Reconsideration Order*.

Order," and not the *Upper Channel First Reconsideration Order*, which was entitled "Memorandum Opinion and Order on Reconsideration." And, as we have held in the past, the petitioner's designation of only one order does not "suffice[] to obtain review of any other order that is part of the same administrative record" even if the order specified has the same docket number as another order sought to be reviewed. *John D. Copanos & Sons*, 854 F.2d at 527.

 On April 24, 2000, almost four months after it filed its petition for review, SBT filed a "Motion to Amend Certificate as to Parties, Rulings and Related Cases." We do not regard this document to be a filing contemporaneous with the petition for review. The dictionary definition of "contemporaneous" is "existing or occurring during the same time." *Webster's Third International Dictionary* 491 (1981).[9] We use the term "contemporaneous filing" to include documents filed at or near the same time as the petition for review. *See, e.g., Entravision*, 202 F.3d at 313–14; *Martin*, 199 F.3d at 1371–73. Although these documents can include "Docketing Statements," "Certificates as to Parties, Rulings and Related Cases," and "Statements of Issues" as well as documents attached to the petition for review, the petitioner's motion to amend filed almost *four months* after its petition for review is plainly not a contemporaneous filing.[10] Moreover, we could easily conclude from the motion to amend that it was *not* SBT's intent to seek review of the *Upper Channel First Reconsideration Order* at the time it filed the petition for review, but instead an afterthought occurring several months down the road.[11] Accordingly, we find nothing in the petition for review or documents filed contemporaneously therewith from which we can fairly infer that the petitioner sought review of the *Upper Channel First Reconsideration Order* in its petition for review.[12]

9. We acknowledge that while courts use the term "contemporaneous" to mean "close in time," it is a relative term. For example, under the contemporaneous construction doctrine, a court or agency decision or practice interpreting an ambiguous statute may be considered a contemporaneous construction even though the interpreting act occurs months or even one year or more after the statute was enacted. *See Andrus v. Shell Oil Co.*, 446 U.S. 657, 673 n. 12, 100 S.Ct. 1932, 64 L.Ed.2d 593 (1980); *Norwegian Nitrogen Prods. Co. v. United States*, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933). On the other hand, under the contemporaneous objection rule, an objection to the admission of evidence may not be considered a contemporaneous objection even if made within a few minutes of the objected-to admission. *See Henry v. Mississippi*, 379 U.S. 443, 85 S.Ct. 564, 567–68, 13 L.Ed.2d 408 (1965); *Wilson v. Waggener*, 837 F.2d 220, 222 (5th Cir.1988).

10. SBT maintains that its failure to specify the *Upper Channel First Reconsideration Order* was a ministerial oversight which "was corrected by amendment accepted by the Court,"

relying on this court's opinion in *City of Oconto Falls v. FERC*, 204 F.3d 1154, 1160 (D.C.Cir.2000). But our holding in *Oconto Falls* does not depart from our decisions in *Entravision, Martin, Southwestern Bell* and *City of Benton*: It did not hold that a brief, or any document not filed contemporaneously with the petition for review (like the motion to amend here), may be considered a contemporaneous filing from which a court may infer intent.

11. After all, in its original October 19, 1999 petition for review (subsequently voluntarily dismissed), SBT specified each of the lower channel orders and the *Upper Channel First Reconsideration Order*, manifesting that it knew how to specify the orders it sought to challenge.

12. SBT asserts that the FCC would not be prejudiced by our review of the *Upper Channel First Reconsideration Order*. But we consider prejudice to the opposing party only if we *first* find it fair to infer the petitioner's intent. *See City of Benton*, 136 F.3d at 826–27.

The petitioner next argues that the *Lower Channel Report and Order* and the *Upper Channel First Reconsideration Order* are part of a single consolidated rule-making, thereby making the separate identification of the upper channel order surplusage. To support its contention, SBT points to its "Consolidated Supplement to Petitions for Reconsideration" filed October 24, 1997, maintaining that it worked to combine the two petitions for reconsideration, both of which were denied in the *Lower Channel Reconsideration Order*. Nevertheless, SBT had filed two *separate* petitions for reconsideration: The first "request[ed] that the Commission reconsider its decisions within [the *Lower Channel Report and Order*]." JA 477. The second, filed the same day, "request[ed] that the Commission reconsider its decisions within its [*Upper Channel First Reconsideration Order*]." JA 511. The filing of two separate petitions for reconsideration indicates not only that the *Lower Channel Report and Order* and the *Upper Channel First Reconsideration Order* are separate orders but also that SBT viewed them as such notwithstanding they arose from the same rulemaking proceeding.

Contrary to SBT's claim, moreover, its Consolidated Supplement nowhere expressly requested that the Commission consolidate the petitions for reconsideration. Rather, it argued that the Commission failed to obtain SBA approval of its "small business" definitions in the Commission's 1997 orders. JA 563. The FCC responded separately to the issues raised in the Supplement, addressing only the issues regarding the lower channel rulemaking in the *Lower Channel Reconsideration Order*. *See Lower Channel Reconsideration Order*, 14 F.C.C.R. 17,566, ¶ 87 n. 251. Although the Appendix to the *Lower Channel Reconsideration Order*, listing the petitions addressed in the order, noted *an* SBT petition for reconsideration

as well as SBT's Supplement, by the time the petitioner filed its petition for review (on December 29, 1999), the FCC had issued its *Upper Channel Second Reconsideration Order*, putting SBT on notice that the FCC had also denied SBT's petition for reconsideration of the *Upper Channel First Reconsideration Order*. The petitioner's argument that the Commission's *Lower Channel Reconsideration Order* ignored issues included in its petition for reconsideration of the *Upper Channel First Reconsideration Order* further manifests that SBT believed the FCC treated the petitions separately, responding to one in its *Lower Channel Reconsideration Order* and to the other in its *Upper Channel Second Reconsideration Order*. Accordingly, we must dismiss SBT's petition for review to the extent that it attempts to challenge the *Upper Channel First Reconsideration Order* because it failed to designate that order in accordance with Fed. R.App. P. 15(a)(2)(C).

Even if we found no violation of Rule 15(a)(C), we would nevertheless dismiss the challenge to the *Upper Channel First Reconsideration Order* because it is incurably premature. A party that files a petition for reconsideration before an agency "render[s] the underlying agency action nonfinal (and hence unreviewable) with respect to th[at] party." *United Transp. Union v. ICC,* 871 F.2d 1114, 1116 (D.C.Cir.1989). "Therefore, a party that stays before an agency to seek reconsideration of an order cannot at the same time appear before a court to seek review of that same order, any more than the party could literally be in two places at the same time." *Bellsouth Corp. v. FCC,* 17 F.3d 1487, 1489 (D.C.Cir.1994).

The petitioner filed a separate petition for reconsideration of each of the 1997 SMR orders. Its two petitions had the effect of making both the *Lower Channel Report and Order* and the *Upper Channel*

First Reconsideration Order nonfinal as to it, for the purpose of judicial review, until "entry" of the Lower Channel Reconsideration Order and of the Upper Channel Second Reconsideration Order respectively. See 28 U.S.C. § 2344. 28 U.S.C. § 2344 "imposes a jurisdictional bar to judicial consideration of petitions filed prior to entry of the agency orders to which they pertain." Western Union Tel. Co. v. FCC, 773 F.2d 375, 378 (D.C.Cir.1985). "Entry of the agency order[]" occurs on the date the Commission gives public notice of the order. See 47 U.S.C. § 405; 47 C.F.R. § 1.103(b); Western Union Tel. Co., 773 F.2d at 376. The FCC's rules identify the date of public notice as "the date of publication in the Federal Register." 47 C.F.R. § 1.4(b). On December 29, 1999, the date the petitioner filed its petition for review, the Upper Channel Second Reconsideration Order denying the petitioner's petition for reconsideration of the Upper Channel First Reconsideration Order had not been entered,[13] making the petition for review "incurably premature" as to the Upper Channel First Reconsideration Order. Bellsouth, 17 F.3d at 1490.

SBT responds that the Upper Channel Second Reconsideration Order was a duplicate order "which again denied SBT's consolidated petitions and supplement." Reply Br. 12. We fail to understand how the petitioner could have "rightfully determined that although the duplicate Order did add to the record, it was not significant for the purpose of the Court's jurisdiction." Id. Aside from its bare assertion, the petitioner has no record support for its claim. Paragraph six of the Lower Channel Reconsideration Order states: "In response to the [Lower Channel Report and Order], the Commission received a number of pleadings requesting reconsideration, modification or clarification of its rules relating to mandatory relocations, co-channel interference, spectrum block size, geographic area licensing, and partitioning and disaggregation. We address these concerns below." 14 F.C.C.R. 17,566 at ¶ 6. Throughout the "Discussion" portion of the Lower Channel Reconsideration Order, the Commission primarily referred to the Lower Channel Report and Order. Although it did mention the Upper Channel First Reconsideration Order in a limited context, see, e.g., id. at ¶¶ 33, 41, 70, it addressed only those arguments presented in SBT's petition for reconsideration of the Lower Channel Report and Order,[14] not SBT's petition for reconsideration of the Upper Channel First Reconsideration Order.[15] We thus find no merit in SBT's contention that the Upper Channel Second Reconsideration Order was a duplicate order relieving it of the obligation to separately challenge that order.

**13.** Entry of the Upper Channel Second Reconsideration Order occurred on July 14, 2000. 65 Fed. Reg. 43,716.

**14.** For example, footnote 35 of the Lower Channel Reconsideration Order cites "SBT Petition at 7, n.5." Id. at ¶ 12 n. 35. Only the petitioner's petition for reconsideration of the Lower Channel Report and Order has a footnote on its seventh page.

**15.** Footnote 1 of the Upper Channel Second Reconsideration Order notes that the Industrial Telecommunications Association, Inc. filed a single Petition for Clarification and Reconsideration of both the Lower Channel Report and Order and the Upper Channel First Reconsideration Order. The FCC explained that it addressed the issues raised in that petition in its Lower Channel Reconsideration Order. While the FCC's notation may have recognized that the 1997 orders contained overlapping issues, at the same time the Commission sent a clear message to SBT that the FCC did not consider its petitions to be consolidated and that the Lower Channel Reconsideration Order did not address issues raised in SBT's petition for reconsideration of the Upper Channel First Reconsideration Order.

### B. Lower Channel Orders

We turn to SBT's challenge to the *Lower Channel Report and Order* and *Lower Channel Reconsideration Order.* SBT makes two claims: (1) the FCC's failure to obtain SBA approval of its small business definitions violated 15 U.S.C. § 632(a)(2)(C)(iii) and 5 U.S.C. § 553(d) and (2) the Commission's Final Regulatory Flexibility Act (FRFA) analysis in the *Lower Channel First Report and Order* was invalid under 5 U.S.C. § 604(a)(5).

■ 15 U.S.C. § 632(a)(2)(C) provides: "Unless specifically authorized by statute, no Federal department or agency may prescribe a size standard for categorizing a small business concern, unless such pro-posed size standard . . . (iii) is approved by the Administrator [of the SBA]." SBT argues that in failing to obtain the SBA Administrator's prior approval of its defini-tion of "small business," the FCC violated its statutory duties under Title 15 and Title 5. The FCC acknowledges that it did not have SBA approval at the time it adopted the *Lower Channel Report and Order* on June 23, 1997. Nevertheless the SBA had approved the definitions before the FCC commenced the lower channel auction, *see* JA 609 (Aug. 10, 1999 approval letter for lower channel auction). The SBA's tardy approval does not, in our view, nullify the entire rulemaking; the SBA approved the definitions before the auction and SBT failed to show that any of its members were harmed in any way by the timing of the SBA approval.[16]

■ The petitioner next asserts that the FRFA analysis contained .in the *Lower Channel First Report and Order* violated 5 U.S.C. § 604(a)(5). Pursuant to 5 U.S.C. § 604(a)(5) an agency is required to in-clude in its FRFA analysis "a description of the steps the agency has taken to mini-mize the significant economic impact on small entities consistent with the stated objectives of applicable statutes." The pe-titioner challenges the FCC's decision to require EA licensees to pay relocation costs to an incumbent licensee for ex-penses incurred from relocating from the upper 200 channels to the lower 230 chan-nels only after the relocation is complete and the upper channel frequencies are clear. *See Lower Channel Reconsidera-tion Order,* 12 F.C.C.R. 17,566 ¶¶ 57–58. It maintains that the FCC failed to de-scribe what steps it took to minimize the economic impact on the small incumbent licensees that will have to pay relocation costs up front.

Acknowledging that the *Lower Channel Reconsideration Order* is unclear on when incumbent licensees will be reimbursed for relocation costs,[17] the Commission asked

---

16. SBT claims that the FCC knowingly pub-lished a misrepresentation by stating, errone-ously, in its FRFA analysis accompanying the *Lower Channel Report and Order* that the SBA "has approved these definitions for 800 MHz SMR services." Although SBT did bring the issue of SBA approval to the attention of the Commission in its Consolidated Supplement, it never claimed before now that the FCC misrepresented the facts. Because the Com-mission was not given "a meaningful 'oppor-tunity to pass' on the issue," the claim is not properly before this court. *See* 47 U.S.C. § 405; *Bartholdi Cable Co., Inc. v. FCC,* 114 F.3d 274, 280 (D.C.Cir.1997).

17. In the *Lower Channel Report and Order,* the Commission addressed when an EA licensee must reimburse another EA licensee for costs associated with relocating an incumbent li-censee. *See Lower Channel Report and Order,* 12 F.C.C.R. 19,079, at ¶¶ 120–25. But the Commission did not address the timing of payments between EA licensees and incum-bent licensees. In response to petitions for reconsideration filed by the AMTA and the Personal Communications Industry Associa-tion (PCIA), which contended that incumbent licensees should be reimbursed for relocation costs as those expenses are incurred, *see Low-er Channel Reconsideration Order,* 14 F.C.C.R. 17,566, at ¶ 58, the Commission purported to

that the court await the Commission's decision on a petition for clarification filed by the American Mobile Telecommunications Association, Inc. (AMTA). The FCC subsequently reconsidered the issue in "*In the Matter of Amendment of Part 90 of the Commission's Rules to Facilitate Future Development of SMR Systems in the 800 MHz Frequency Band,*" FCC 01–33, 2001 WL 87406 (released February 2, 2001) [*Lower Channel Second Reconsideration Order*]. The FCC noted that "neither the [*Lower Channel Report and Order*] nor the [*Lower Channel Reconsideration Order*] adequately addressed the question of when incumbent licensees should be repaid for their involuntary relocation costs." *Id.* ¶ 7. It explained that, because EA licensees bear the costs of building and testing the replacement system, "it is clear that the primary cost burden for involuntary relocations rests on the EA licensee, not the incumbent." *Id.* ¶ 8. It therefore concluded that to the extent the incumbent may incur additional relocation costs, they will be reimbursed by the EA licensee after relocation is complete. *Id.* ¶ ¶ 8–10.

From our review of the record, however, it appears that SBT failed to raise the FRFA analysis issue during the rulemaking, *see* 47 U.S.C. § 405; *Southwestern Pa. Growth Alliance v. Browner,* 121 F.3d 106, 122 (3d Cir.1997), and the FCC noted that "[n]o reconsideration petitions were submitted in response to the FRFA." *Lower Channel Reconsideration Order,* 14 F.C.C.R. 17,566, at App. C ¶ 3. Assuming arguendo that SBT's failure is understandable in light of the Commission's admission that neither the *Lower Channel Report and Order* nor the *Lower Channel Reconsideration Order* clearly addressed the issue, we would nonetheless reject the challenge. *Cf. Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d

"reiterate" its previous position that "relocation costs will not be due until the incumbent

681 (1967) (ripeness); *TeleSTAR, Inc. v. FCC,* 888 F.2d 132, 134 (D.C.Cir.1989) (same); *Midwestern Gas Transmission Co. v. FERC,* 589 F.2d 603, 618 (D.C.Cir. 1978) (same); *see also Public Citizen v. NRC,* 845 F.2d 1105, 1108–10 (D.C.Cir. 1988) (final agency action).

### Conclusion

To sum up, we conclude that SBT's failure to specify the *Upper Channel First Reconsideration Order* as an order under challenge violates Federal Rules of Appellate Procedure 15 and mandates that we dismiss the petition to the extent it seeks review of that order. With respect to SBT's challenges to the lower channel orders—failure to obtain SBA approval of the small business definitions and failure to perform an adequate FRFA analysis—we conclude the first challenge is without merit and the second was waived. For the foregoing reasons, and in accordance with this opinion, the petition for review is dismissed in part and denied in part.

*So ordered.*