In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 15-3764

CHARMAINE HAMER,

*Plaintiff-Appellant,*

*v.*

NEIGHBORHOOD HOUSING SERVICES OF CHICAGO and FANNIE
MAE,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
On Remand from the Supreme Court of the United States.
No. 12 C 10150 — **Rubén Castillo**, *Chief Judge*.

_____

ARGUED MAY 15, 2018 — DECIDED JULY 30, 2018

_____

Before EASTERBROOK, SYKES, and BARRETT, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Charmaine Hamer worked at
Fannie Mae's Mortgage Help Center from 2010 to 2012. Fannie Mae contracted with Neighborhood Housing Services of
Chicago (Hamer's employer) to run the Center but maintained the right to remove individual employees. After
Hamer's application for a promotion was denied and she

was removed from the Center, she sued both Neighborhood Housing and Fannie Mae for discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34. The district court granted summary judgment in the defendants' favor, and Hamer appealed the retaliation claims.

A statute requires notices of appeal to be filed within thirty days after entry of judgment but provides that district courts may "extend the time for appeal upon a showing of excusable neglect or good cause." 28 U.S.C. §2107. This statute does not set a limit on extensions' length, but the rule implementing the statute provides that "[n]o extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later." Fed. R. App. P. 4(a)(5)(C).

On September 14, 2015, the district court entered summary judgment in favor of defendants. On October 8 Hamer's counsel submitted a motion to withdraw and to extend the time for appeal by 60 days (to December 14), to give Hamer time to acquire new counsel. The district court granted the motion, despite Rule 4(a)(5)(C), and Hamer filed her notice of appeal *pro se* on December 11—within the time erroneously allowed but outside the maximum under Rule 4(a)(5)(C). None of the litigants appears to have given any thought to the violation of Rule 4 until this court, on review of the docketing statements, ordered the parties to submit jurisdictional memoranda on the timeliness issue.

This court dismissed Hamer's appeal, concluding that the time limit imposed by Rule 4(a)(5)(C) is jurisdictional. 835

F.3d 761 (7th Cir. 2016). The Supreme Court vacated that decision, holding that statutory time limits are jurisdictional but that those imposed by rule are not—though they remain mandatory if properly invoked. 138 S. Ct. 13 (2017). See also *Bowles v. Russell*, 551 U.S. 205 (2007). We must now decide whether defendants properly invoked Rule 4(a)(5)(C) and, if not, must reach the merits.

Hamer contends that the defendants may not now challenge her appeal as untimely because they failed either to appeal from the district court's order granting the extension or to cross-appeal from the judgment. An appeal is necessary when a party seeks to attack the judgment in a way that either expands its own rights or narrows the rights of its opponent. *United States v. American Railway Express Co.*, 265 U.S. 425, 435 (1924); *Massachusetts Mutual Life Insurance Co. v. Ludwig*, 426 U.S. 479 (1976); Robert L. Stern, *When to Cross-Appeal or Cross-Petition—Certainty or Confusion?*, 87 HARV. L. REV. 763 (1974). Defendants are not seeking to alter the judgment, so they did not need to appeal. This conclusion aligns us with the Tenth Circuit, *United States v. Madrid*, 633 F.3d 1222 (10th Cir. 2011), although the Third and Sixth Circuits have held otherwise. *Amatangelo v. Donora*, 212 F.3d 776 (3d Cir. 2000); *United States v. Burch*, 781 F.3d 342 (6th Cir. 2015). Our conclusion also is in line with the Supreme Court's rule that an appellee seeking to defend a judgment "may, without taking a cross-appeal, urge in support of [it] any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." *American Railway Express*, 265 U.S. at 435.

Hamer's argument that defendants forfeited the timeliness issue by not protesting in the district court likewise goes nowhere. Because the district judge granted the motion for extension immediately, defendants could not oppose it before the judge acted. And it is never necessary to remonstrate with a judge after an order has been entered. Motions for reconsideration are discretionary, not obligatory. See Fed. R. Civ. P. 46 ("A formal exception to a ruling or order is unnecessary.").

The contention that the defendants waived any challenge to the timeliness of Hamer's appeal by saying in their docketing statement that the notice of appeal was "timely" requires more discussion. Under the heading "Appellate Court Jurisdiction", the docketing statement declares that "Plaintiff-Appellant filed a timely Notice of Appeal" and under the heading "The Date of Entry of the Judgment Sought to be Reviewed" that "Plaintiff-Appellant timely filed a Notice of Appeal". Defendants argue that language in docketing statements cannot waive or forfeit a right and that, by addressing the timeliness issue—in response to this court's order—before the merits, they have preserved the argument.

Mandatory claim-processing rules, "[i]f properly invoked, … must be enforced, but they may be waived or forfeited." 138 S. Ct. at 17. Since the Supreme Court's clarification that time limits imposed by federal rules that do not have a statutory basis are claim-processing rules, *Kontrick v. Ryan*, 540 U.S. 443 (2004), this court has held that the limit in Rule 4(b) for criminal appeals will not be enforced if waived. See *United States v. Neff*, 598 F.3d 320, 323 (7th Cir. 2010). Treating timeliness under Rule 4(a)(5)(C) identically respects "the principle of party presentation so basic to our system of

adjudication." *Arizona v. California*, 530 U.S. 392, 413 (2000). See also *Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008).

We have found scant authority on docketing statements in general, and we have not located any authority from any circuit on whether representations within docketing statements can constitute waivers. Defendants point to local rules and cases from other circuits that characterize docketing statements as preliminary, nonbinding documents. As defendants observe, however, "a docketing statement is a creature of a court's local rules," and this court is not bound by other courts' pronouncements on the effect of docketing statements that differ from ours. Many courts of appeals require docketing statements, but the Seventh Circuit may be unique in requiring them to take the form of prose paragraphs rather than responses to a printed form.

Docketing statements serve several important functions in this court. They form part of the "short record" that senior court staff reviews "[i]n an effort to uncover jurisdictional defects very early in the appellate process". See *Practitioner's Handbook for Appeals to the United States Court of Appeals for the Seventh Circuit* 19 (2017 ed.). The court also uses docketing statements to determine "whether an appeal is related to other appeals, where an incarcerated party is housed, and who current public officials are in official capacity suits". *Id.* at 119. We require docketing statements to contain all information that Fed. R. App. P. 28 requires in jurisdictional statements. Circuit R. 3(c). Docketing statements are always required of an appellant, but an appellee need submit a docketing statement only if the appellant's is not "complete and correct".

The fact that some information required in docketing statements relates to subject-matter jurisdiction—a topic that cannot be waived—does not imply that pronouncements within docketing statements on other topics can never waive a right under a claim-processing rule. This court has emphasized the importance of docketing statements. *United States v. Lloyd*, 398 F.3d 978, 980–81 (7th Cir. 2005); *Baez-Sanchez v. Sessions*, 862 F.3d 638, 639 (7th Cir. 2017) (Wood, C.J., in chambers). And we enforce our requirements in a manner calculated to induce compliance. See, e.g., *BondPro Corp. v. Siemens Power Generation, Inc.*, 466 F.3d 562 (7th Cir. 2006) (penalizing failures to comply with jurisdictional-statement requirements). Giving an affirmative statement the same effect whether it is made in a docketing statement, in the argument section of a brief, or at oral argument creates an incentive for litigants and lawyers to take the rules and their representations to this court seriously.

Defendants aren't helped by cases holding that litigants may raise in their briefs issues that were not in their docketing statements. That substantive arguments are not forfeited by omission from a docketing statement does not bear on whether they can be waived by language *included* in a docketing statement. Rights under nonjurisdictional rules, we therefore hold, can be waived in docketing statements.

In holding so, we are not the first court of appeals to give language contained in a docketing statement effect on a matter other than subject-matter jurisdiction: Several courts have looked to information included in docketing statements to supplement otherwise-insufficient notices of appeal. *Díaz Aviation Corp. v. Airport Aviation Services, Inc.*, 716 F.3d 256, 261–63 (1st Cir. 2013); *Haney v. Addison*, 175 F.3d 1217, 1219

(10th Cir. 1999); *Small Business in Telecommunications v. FCC*, 251 F.3d 1015, 1020–21 (D.C. Cir. 2001). And the Fourth Circuit has looked to the list of issues in a docketing statement, among other things, to find that a party was aware of an argument, then intentionally abandoned it by omitting it from the appellate brief. *South Atlantic Limited Partnership of Tennessee, LP v. Riese*, 356 F.3d 576, 587 (4th Cir. 2004).

So the question now is whether the declarations in defendants' docketing statement constitute waivers. They take the traditional form of a waiver: affirmative statements that Hamer's appeal is "timely". Defendants contend, however, that because docketing statements pertain primarily to jurisdiction, the two relevant sentences assert only that the appeal was timely in a *jurisdictional* sense, while reserving the right to challenge *nonjurisdictional* timeliness. Yet both sentences are unconditional statements that the appeal is timely. Defendants could have included a caveat that they were discussing only jurisdictional timeliness, but they didn't. The common-sense meaning of defendants' affirmative statements: the appeal is timely, period.

Defendants argue that Circuit Rule 3(c)'s imperative—that appellees supplement appellants' docketing statements that are not "complete and correct"—does not encompass a duty to identify nonjurisdictional defects. But "complete and correct" doesn't mean "complete and correct on jurisdictional matters alone." And even if defendants' reading of Rule 3(c) were correct, language doesn't fall into a safe haven from waiver merely because it is included at a litigant's discretion.

Waiver is an "intentional relinquishment or abandonment of a known right". *Johnson v. Zerbst*, 304 U.S. 458, 464

(1938). But courts look to litigants' (and their attorneys') words and actions as objective manifestations, rather than asking what parties were thinking when they said or did something. See, e.g., *United States v. Fuentes*, 858 F.3d 1119, 1121 (7th Cir. 2017); *United States v. Ford*, 798 F.3d 655, 660 (7th Cir. 2015). The requirement that a right be "known" in this case means only that defendants had to know that timeliness matters. Cf. *Iowa v. Tovar*, 541 U.S. 77, 92 (2004); *United States v. Ruiz*, 536 U.S. 622, 629 (2002). Because defendants actively asserted that the appeal was timely, they cannot now argue otherwise.

Defendants contend that, even if they waived the timeliness argument, Hamer likewise waived the benefit of that waiver. Because Hamer argued in her jurisdictional memorandum during the first round of appellate litigation that defendants "forfeited and wa[i]ved their right to motion for dismissal of case based on untimely filing of appellant's motion to appeal", this contention is unavailing. See 835 F.3d at 763 (recognizing that Hamer had argued that defendants waived the timeliness issue). So we must reach the merits of Hamer's retaliation claim.

Hamer was passed over for a promotion in February 2012 in favor of a younger, male colleague. Believing that this adverse employment action constituted age and sex discrimination, Hamer met with Linda Anderson, Neighborhood Housing's Director of Human Resources, on February 27, and discussed her intention to file a charge of discrimination with the EEOC. Anderson called Toya Glenn, Hamer's supervisor, on February 28 to discuss the reasons that Hamer was not offered the promotion. On March 1, Anderson emailed Robin Coffey, Neighborhood Housing's Assistant

Deputy Director, to request a meeting to "discuss a person-
nel issue." Later that day, Coffey replied to Anderson's
email that the decision had been made to remove Hamer
from the Mortgage Help Center. (Defendants assert that
Glenn and Coffey made this decision without Fannie Mae
exercising its right to remove employees from the Mortgage
Help Center, but Hamer points to evidence that Mark Green,
the Fannie Mae Site Manager, requested her removal. Given
this factual dispute, which the district court did not resolve,
we refer to all three as "decisionmakers".) Hamer was tem-
porarily assigned alternative duties at Neighborhood Hous-
ing's central office. On March 14 Anderson told Hamer she
could stay with Neighborhood Housing in a job that came
with a 25% pay cut and a longer, more expensive commute,
or she could refuse the job and be deemed to have resigned.
She chose the latter.

Neighborhood Housing argues that Hamer's removal
was prompted, not by a complaint that the decisionmakers
were unaware of, but by ongoing communication issues that
her supervisor had noted in multiple performance reviews
and that Green complained of during February 2012. Ac-
cording to Hamer, these issues could not have been the real
reason for her removal because Glenn, the day before An-
derson called her, drafted a career progression plan giving
Hamer a month to improve her communication skills and,
hours before the call, arranged for Hamer to attend a confer-
ence in March. This suspicious timing, Hamer asserts, is evi-
dence that Neighborhood Housing's proffered reason is pre-
textual.

The district court held that being given the choice be-
tween accepting a demotion and voluntarily resigning was

not a constructive discharge and that Hamer had failed to show that her removal from the Center (which defendants conceded was an adverse employment action) was caused by the discrimination complaint. We don't need to decide whether the district court was correct on the constructive discharge point, however, because Hamer has not established a causal link between her discrimination complaint and either adverse action.

To retaliate against a complainant, decisionmakers must be aware of the complaint. Anderson knew of Hamer's intention to file a charge but didn't make any employment decisions, and Hamer has not established a genuine dispute about the decisionmakers' knowledge. Glenn, Coffey, and Green all filed affidavits asserting they were never told of Hamer's plan to file a complaint with the EEOC, and Anderson asserts that she never told *anyone* about it. In response Hamer offers only speculation.

Hamer observes that the affiants say they were not "told" about her plan to file a complaint but do not discuss whether they learned of the plan in some other way, as she conjectures they might. Glenn knew that Hamer had met with Anderson; maybe she inferred, when Anderson called the next day to discuss the reasons Hamer wasn't promoted, that the meeting concerned allegations of discrimination. Or the notes that Anderson took while meeting with Hamer may have fallen into the decisionmakers' laps. But Hamer did not depose Glenn, Coffey, Green, or anyone else, and she has not offered any support for her speculation. Hamer has not provided even a "scintilla" of evidence, see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986), to support her conjecture that the notes may have been included in her personnel

file and that the decisionmakers looked in it. Speculative as-
sertions about decisionmakers' knowledge are insufficient to
establish a genuine dispute about a material fact. See *Nagle v.
Calumet Park*, 554 F.3d 1106, 1121–22 (7th Cir. 2009). The
judgment of the district court is therefore

AFFIRMED.