┌─────────────────────────────────────────────┐
│ **NONPRECEDENTIAL DISPOSITION** │
│ To be cited only in accordance with Fed. R. App. P. 32.1 │
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted December 7, 2020[*]
Decided December 8, 2020

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

| | |
|---|---|
| No. 19-3362 | |
| JERRY JELLIS, | Appeal from the United States District |
|    *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
|    *v.* | No. 3:15-cv-00630-GCS |
| | |
| LARRY HALE, et al., | Gilbert C. Sison, |
|    *Defendants-Appellees*. | *Magistrate Judge*. |

**O R D E R**

Jerry Jellis, formerly an inmate at Menard Correctional Center, lost at trial on his claim charging two prison officers with excessive force. On appeal he challenges several evidentiary rulings made before and during trial. Because the district court's rulings reflect an appropriate exercise of discretion, we affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

This suit arose out of an incident that took place in Menard's general-population yard in 2013. After a gunshot rang out, Jellis defied an order by the warden to drop to the ground. He was handcuffed and then escorted to the segregation wing by two officers, Larry Hale and Donald Lindenburg. In Jellis's telling, he was assaulted by the officers on the way to segregation and in a holding cell, but we credit the version of the facts that support the jury's verdict. *Gracia v. Sigmatron Int'l, Inc.*, 842 F.3d 1010, 1018 (7th Cir. 2016). The prison investigated Jellis's assault claims but found them to be unsubstantiated.

Jellis brought this suit under 42 U.S.C. § 1983 asserting claims under the Eighth and Fourteenth Amendments. The case eventually proceeded to trial before a magistrate judge, *see* 28 U.S.C. § 636(c), on Jellis's claim that Hale and Lindenburg used excessive force against him.[1]

Along the way, the court denied two motions in limine—rulings that, Jellis believes, affected the trial's outcome. First, the court denied his request that Hale and Lindenberg be barred from presenting what he regards as irrelevant evidence— evidence that he was familiar with the grievance process (having filed grievances in the past) yet filed no grievance here with regard to the alleged assault. The court also denied Jellis's request to require the two officers to testify consistently with his deposition testimony (included with their summary judgment motion) describing how he was kicked and hit.

The court also granted the defendants' motions in limine to exclude evidence relating to video cameras or video surveillance of the alleged assault. Defendants acknowledged the existence of cameras in the relevant area but asserted that one camera was non-operational at the time and that footage from the other cameras had since been deleted. Relatedly, the court later denied Jellis's request for an adverse-inference jury instruction based on spoliation of video evidence. As the court explained, there was "little-to-no non-speculative evidence that an incriminatory video ever existed," let alone any evidence about what the video might have shown or that its destruction took place for any reason other than the prison's policy for retaining videos.

---

[1] Jellis also was allowed to proceed—and lost—at trial on his claim that a medical technician acted with deliberate indifference in delaying treatment. On appeal he raises no argument about this claim, so we say nothing further about it.

At trial, the court permitted Jellis's counsel to inquire about the absence of video evidence in the prison's post-incident investigation. After the prison presented testimony from an official who confirmed that one camera was non-operational, Jellis asked to call Robert Woodall, a fellow prisoner, to testify about his role in installing other video cameras near the location of the incident. But the court denied the request, noting—based on its reading of Woodall's declaration—that he could not "testify that [the camera] was working," and in any event he was a prisoner who was not under subpoena.

The jury ultimately returned a verdict for the defendants.

On appeal, Jellis first argues that the district court abused its discretion in ruling against him on the motions in limine. But our review of these rulings is hindered by Jellis's failure to order a transcript of the final pretrial conference, in which the district court stated its reasons on the record. We cannot review a decision without knowing the district court's reasons. *See* FED. R. APP. P. 10(b)(2); *Hicks v. Avery Drei, LLC*, 654 F.3d 739, 743–44 (7th Cir. 2011) (review not possible when appellant did not request transcription of oral arguments or bench ruling on motion in limine).

Jellis next argues that the district court abused its discretion when it denied his motion for an adverse-inference instruction regarding the absence of video footage. An adverse-inference instruction is appropriate when a party had a duty to preserve evidence and the evidence is destroyed in bad faith. *Bracey v. Grondin*, 712 F.3d 1012, 1018–19 (7th Cir. 2013). Jellis infers bad-faith destruction of evidence from the defendants' responses to his discovery requests. First, in his view, the defendants waffled in their timeline of how long video footage is retained: In one response, the defendants stated that footage is destroyed after 90 days, but in another response they changed that figure to 30 days for one area. Second, Jellis, for the first time, questions the veracity of a statement in the prison's investigation report that the pertinent video camera was "nonoperational"; he recalls an investigator telling him that he knew the identity of the officers "on camera."

The court appropriately denied the motion on grounds that Jellis had not introduced competent evidence that any video footage had been destroyed in bad faith. A request for an adverse-inference instruction requires more than speculation that evidence was destroyed to hide it. *Id.* at 1019–20. Jellis points to nothing in the record to suggest the defendants intentionally destroyed any video evidence, or that its destruction occurred outside the regular course of the prison's retention policy. With

regard to his argument that the defendants responded inconsistently about the length of time that the prison retained video footage (be it 30 or 90 days), the precise duration is immaterial here, given that any footage would have been destroyed by the time he filed this lawsuit in 2015, nearly two years after the incident.[2] As for Jellis's other argument, concerning the veracity of the investigation report, he not only waived the argument by failing to raise it first in the district court, *see Sauk Prairie Conservation All. v. United States Dep't of the Interior*, 944 F.3d 664, 674 (7th Cir. 2019), *cert. denied sub nom. Sauk Prairie Conservation All. v. United States Dep't of the Interior*, 140 S. Ct. 2764 (2020), but the court also aptly rejected his evidence as speculative.

Jellis next argues that the district court abused its discretion when it denied his request to call Woodall as a witness at trial to testify that he installed the video cameras and knew that they were operational. But the court exercised appropriate discretion in denying the request because, as Jellis's counsel conceded at the time, Woodall lacked personal knowledge of whether the video cameras were operational when the incident occurred. *See* FED. R. EVID. 401; *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017).

Finally, Jellis challenges a protective order, entered on the eve of trial, concerning photographs and the investigation report. He suggests that the order relieved the defendants from, for instance, having to lay a foundation for certain witnesses who they wanted to testify. But Jellis's trial counsel waived this challenge by informing the court that she did not object to entry of the order. *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 897 F.3d 835, 840 (7th Cir. 2018).

AFFIRMED

---

[2] To the extent Jellis believes that the prison should have anticipated litigation involving footage from nearby operational camera sites, he has not explained how the prison should have been on notice before this lawsuit of any allegations of excessive force taking place in the surveillance area in question.